## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| ARRAY TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| | ) | **COMPLAINT** |
| COLIN MITCHELL, an individual; | ) | |
| NEXTRACKER, a Delaware corporation; and | ) | |
| MARCO GARCIA, an individual, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff Array Technologies, Inc. ("ATI") complains and alleges as follows against

Defendants Colin Mitchell ("Mitchell"), NEXTracker ("NEXTracker") and Marco Garcia

("Garcia") (collectively, "Defendants"). The allegations herein are made based on personal

knowledge as to ATI with respect to its own actions, and upon information and belief as to all

other matters.

### INTRODUCTION

1.     This case is about a conspiracy among Defendants Mitchell, NEXTracker and

Garcia to conceal breaches by Mitchell of his contractual obligations as an employee of ATI to not

work for or assist a competitor of ATI for a period of one year after Mitchell's employment with

ATI ended. ATI is a leading manufacturer and worldwide distributor of solar tracking systems.

ATI hired Mitchell in May 2013 as its Business Development Manager. In connection with his

employment with ATI, Mitchell signed a Non-Disclosure and Non-Competition Agreement in which Mitchell agreed, among other things, that during his employment and for one year after his employment with ATI, he would not work for or assist a competitor in the business of designing or manufacturing solar tracking equipment or systems. Mitchell breached his covenant not to compete during his employment with ATI and has continued to do so after he left ATI.

2.      On May 25, 2016, while still employed with ATI, Mitchell wrote an email to Cristina Clavijo, the head of Strategic Business Development for Grupo Clavijo, a competitor of ATI located in Spain that, like ATI, makes and sells solar tracking systems and equipment. Mitchell, in violation of his contractual obligations and fiduciary duty to ATI, recommended in this email steps Grupo Clavijo needed to take to successfully grow in the U.S. market, noting that Grupo Clavijo's cost to install its product was higher than ATI's cost. Mitchell wrote, "I can be successful in helping you grow your brand and footprint here in the U.S." Mitchell also listed the base salary and commissions he wanted for three years to work for Grupo Clavijo.

3.      Ultimately, Mitchell did not go work for Grupo Clavijo. Instead, Mitchell and Defendant Garcia, the Chief Commercial Officer ("CCO") for Defendant NEXTracker, ATI's biggest competitor, devised a scheme for Mitchell to assist NEXTracker without overtly appearing to work for NEXTracker. On June 6, 2016, Matthew Binder ("Binder"), a friend and colleague of Mitchell's sent an email in which Binder, referring to Mitchell, wrote, "My good pal at work is contemplating leaving ATI to go work for a competitor."

4.      A couple of days later, and while still working at ATI, Mitchell began having a number of telephone calls with Garcia. These phone calls started at least as early as June 2016 and continued through the day before Mitchell resigned from ATI, on July 8, 2016. For example, on June 8, 2016, Mitchell had a phone call with Garcia. On July 7, 2016, the day before Mitchell resigned from ATI, Mitchell and Garcia made 7 phone calls to one another, including one call lasting 22 minutes and another call of 15 minutes. Throughout this time, ATI and NEXTracker

were competing for approximately 80 jobs with a potential value of over $52,400,000. The next day, July 8, 2016, Mitchell announced his resignation from ATI.

5.     Instead of becoming employed by NEXTracker, which would be an obvious breach of his non-competition agreement, Mitchell was ostensibly employed by Flextronics International, Ltd.,[1] the owner and parent of NEXTracker. After he became employed by Flextronics, Mitchell assured ATI's CEO that he was working only for Flextronics. Subsequent events make clear that Mitchell was in fact working for NEXTracker or, at minimum, assisting NEXTracker in its business operations in violation of his NDA.

6.     On November 18, 2016, NEXTracker's CCO Garcia sent the following text message to Mitchell, directing Mitchell to "respond" to "Pete" with any knowledge that Mitchell had about ATI's "O&M costs and issues":

Text Message
Today 9:51 AM

> Hey Colin, you are cc d on an email about ATI winning 130MW in AU using an argument of lower O&M costs vs NX. Pete is now going after another 130MW. Can you please respond with you knowledge of ATI O&M costs and issues?

7.     The context surrounding this text message made clear that CCO Garcia and NEXTracker sought Mitchell's assistance and disclosure of confidential ATI information to compete unfairly against ATI. Just two days earlier, on November 16, NEXTracker lost a bid to

---

[1]     In September 2016, Flextronics International Ltd. changed its name to Flex Ltd.

ATI that called for supplying solar tracking equipment for four projects in Australia totaling 130 megawatts. "Pete" Wheale is NEXTracker's Vice President of Sales in Australia.

8.      ATI is currently bidding on 28 projects in Australia in competition with NEXTracker.

## THE PARTIES

9.      ATI is a New Mexico corporation having a principal place of business at 3901 Midway Place NE, Albuquerque, New Mexico 87109.  ATI is a leading innovator and provider of proprietary solar tracking technologies and equipment.  ATI sells its solar tracking equipment and related support services and technologies throughout the United States and internationally.

10.      Defendant NEXTracker is a Delaware corporation having its principal place of business at 6200 Paseo Padre Parkway, Fremont, California 94555.

11.      ATI is informed and believes, and thereupon alleges, that at all times relevant to this Complaint, Defendant Mitchell was, and continues to be, a resident of New Mexico.

12.      ATI is informed and believes, and thereupon alleges, that at all times relevant to this Complaint, Defendant Garcia was, and continues to be, a resident of California.

13.      Defendants, and each of them, are being individually sued as participants and aiders and abettors in the wrongful conduct complained of herein, and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

## NATURE OF ACTION

14.      Plaintiff brings this action for: (1) misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*; (2) misappropriation under NMSA 1978, § 57-3A-1, *et seq.* ("NMUTSA"); (3) breach of contract; (4) breach of covenant of good faith and fair dealing;

(5) breach of fiduciary duty; (6) tortious interference with contract; (7) conversion; and (8) unjust enrichment/restitution.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the trade secret laws of the United States, 18 U.S.C. §§ 1836 and 1839.   This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

16.     This Court has personal jurisdiction over Defendant NEXTracker because NEXTracker has engaged in acts of trade secret misappropriation, among other tortuous and wrongful conduct described herein, in this judicial district.

17.     This Court has personal jurisdiction over Defendant Mitchell because he resides in this judicial district and has engaged in acts of trade secret misappropriation, among others, in this judicial district.

18.     This Court has personal jurisdiction over Defendant Garcia because Defendant Garcia has engaged in acts of trade secret misappropriation, among other tortuous and wrongful conduct described herein, in this judicial district.

19.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the Defendants misappropriated trade secrets and performed other tortuous and wrongful acts in this district, and are subject to personal jurisdiction in this district.   Venue is also proper in this Court because Mitchell resides in and is subject to personal jurisdiction in this district.   In addition, Plaintiff does business in this district, has suffered harm in this district, and will continue to suffer harm in this district as a result of Defendants' actions until relief is granted.

**FACTUAL BACKGROUND**

A.    **ATI Is a Leader in the Solar Tracking Industry and Its Highly Confidential Cost Information and Bid Preparation Information Is Critical to ATI's Business and Success.**

20.    Founded in 1989, Plaintiff ATI is the leading U.S.-based manufacturer of smart, cost-effective, and reliable solar tracking systems for utilities, corporations, small businesses and homeowners. Solar trackers allow solar panels to move to track the movement of the sun across the horizon. Solar trackers increase the panels' direct exposure to the sun and the amount of energy the panels generate.

21.    Since 1989, ATI has supplied more than 20,000 trackers to residential customers and more than 6 gigawatts to commercial and utility-scale markets around the globe. ATI has grown to be recognized for its performance-driven products and engineering expertise.

22.    Over the past 27 years, ATI has exclusively focused its efforts on designing and manufacturing solar tracking equipment, and has pioneered significant innovations in ground-mounted solar systems design and manufacturing. These innovations are the foundation of ATI's success, resulting in a vast and diverse customer base comprised of homeowners and business of all sizes.

23.    Information regarding a company's bid preparation and contract procurement process is confidential. Over the years, ATI has developed an intricate bid preparation and contract procurement model that permits it to offer solar tracking equipment to customers at competitive prices.

24.    ATI's bid preparation and contract procurement information—including its pricing, profit margins, costs of production, operations and maintenance costs, pricing concessions, promotional discounts, advertising allowances, volume rebates, marketing concessions, payment terms and rebate incentives—have independent economic value. This information provides ATI

with a significant competitive advantage over ATI's competitors in a number of ways, including by enabling ATI to formulate competitive bids.

25.     Information about ATI's costs, bid preparation and contract procurement would be valuable to a competitor because it would allow a competitor to set prices which meet or undercut ATI's prices. ATI's bid preparation and contract procurement information, including its costs and pricing data, is unique to ATI and is information not readily known in the industry. Thus, ATI's bid preparation information has independent economic value and is a trade secret belonging to ATI.

26.     This information would have value to ATI's competitors who are unaware of the information because, if known, they could put that information to beneficial use by underbidding ATI on solar tracking projects.

**B.     ATI Takes Reasonable Efforts to Maintain the Secrecy of Its Contract Procurement and Bidding Preparation Information.**

27.     Because of the highly competitive nature of the solar tracking industry, and because ATI needs to maintain its competitive position through the protection of its confidential business data, ATI takes reasonable steps to ensure that its confidential business data, including its bid preparation and contract procurement information, is protected.

28.     ATI protects the confidentiality of its bid preparation and contract procurement information by, among other things, requiring its employees to sign employment contracts that include strict confidentiality provisions. ATI protects its highly valuable business information by having its employees sign non-compete agreements that are reasonable in scope. Such agreements are important because ATI employees whose job responsibilities include obtaining contracts or preparing bids typically involve close contact with ATI's customers and require access to ATI's confidential bidding information and bidding structure.

29.     ATI also restricts access to its bid preparation and contract procurement information by ensuring that it is password-protected, accessible only by certain ATI employees, and disseminated within the company only on a "need to know" basis.

**C.      Mitchell Violated His Non-Compete Agreement Both During and After His Employment With ATI.**

30.     The evidence unearthed to date, without the benefit of discovery, shows that Defendant Mitchell, ATI's former Business Development Manager, violated his non-compete agreement both while in ATI's employ and after he departed ATI.

31.     In May 2013, Mitchell was hired by ATI as its Business Development Manager. Mitchell was responsible for all aspects of sales from identifying sales opportunities to closing the sale, including: identifying, contracting and/or qualifying potential customers and presenting solar tracking systems to same; articulating ATI products with appropriate product positioning to ATI's customers; and, bid preparation.

32.     On or about May 3, 2013, Mitchell executed a "Non-Disclosure, Non-Solicitation, and Non-Competition Agreement" (referred to herein as "NDA").  Attached hereto as Ex. 1.  The NDA prohibits him from engaging directly or indirectly in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems both during his employment with ATI and for one year after the termination of his employment with ATI.

33.     Specifically, Section 4 of the NDA, entitled "Non-Competition Agreement," states as follows:

> During the period of Employee's employment with Employer, and for one year after the termination of such employment for whatever reason, with or without cause, Employee shall not, directly or indirectly engage in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems, whether as an officer, director, partner, proprietor, investor,

associate, employee, consultant, independent contractor or in any other capacity relating to such a business.

Ex. 1 at § 4.

34.     Defendant Mitchell violated his non-compete agreement while he was still employed at ATI.  On May 25, 2016, Mitchell authored an email to Cristina Clavijo, the head of Strategic Business Development for Grupo Clavijo, a Spanish company that competes against ATI for sales of solar tracking systems and equipment.

35.     In his May 25th email to Christina at Clavijo, Defendant Mitchell wrote, "I really want to thank you again for this opportunity" and "I believe I can be successful in helping you grow your brand and footprint here in the U.S. in a sustainable manner."  Mitchell then described the challenges Grupo Clavijo faced to grow in the U.S. market, noting that Grupo Clavijo's cost to install its product was higher than ATI's cost.  Mitchell also provided recommendations about what Grupo Clavijo should do to grow in the U.S. market.

36.     Like ATI, NEXTracker supplies solar tracking equipment.  NEXTracker is ATI's biggest competitor.  NEXTracker is a wholly-owned subsidiary of Flex, Ltd. ("Flex").  ATI has discovered evidence that Mitchell is assisting NEXTracker to compete against ATI.

37.     On June 6, 2016, a friend and colleague of Mitchell's sent an email in which, referring to Mitchell, he wrote, "My good pal at work is contemplating leaving ATI to go work for a competitor."  This email also stated that Mitchell needed advice on how to deal with his non-compete agreement.

38.     On June 8, 2016, Mitchell had a telephone call with NEXTracker's Chief Commercial Officer, Marco Garcia.  As Chief Commercial Officer for NEXTracker, Garcia is responsible for the company's commercial strategy, and leads the company's activities as they relate to marketing, sales, product development and customer service.  In the month before

Mitchell resigned from ATI on July 8, 2016, there were at least nine (9) telephone calls placed between Mitchell and Garcia.

39.     On June 30, 2016, upon information and belief, Mitchell had a phone call with Garcia that lasted approximately 14 minutes.  On July 7th—*one day before Mitchell resigned from ATI*—there were at least 7 telephone calls between Mitchell and Garcia, one of which occurred at 12:48 p.m. and lasted about twenty-two minutes, and another that occurred at 7:06 p.m. and lasted approximately fifteen minutes.

40.     On July 8, 2016, Mitchell resigned from ATI.

41.     Subsequently, Mitchell claimed that he had accepted employment with Flex.  On September 13, 2016, ATI representatives attended a trade convention named Solar Power International ("SPI").  Mitchell was also present at the convention and stopped by ATI's exhibit booth.  At that time, Mitchell told ATI's CEO that he was going to work for Flextronics.  Aware that NEXTracker is owned by Flextronics, ATI's CEO replied, "You mean NEXTracker?" Mitchell said, "Oh no, they are keeping me far away from them."  Mitchell claimed that he was "selling modules" for Flextronics.

42.     After Mitchell resigned from ATI, ATI retained the phone number he used and reassigned it to another employee.  On November 18, 2016, a text message was sent to Mitchell's former ATI phone number from the phone of Marco Garcia, NEXTracker's Chief Commercial Officer.  The text read as follows:



43.     Garcia's text message to Mitchell refers to ATI winning a 130MW (megawatt) project in Australia.  Just two days prior to this November 18th text message, ATI was selected by Bouygues in Australia to supply solar tracking equipment for four projects totaling 130 megawatts. NEXTracker had also submitted a bid for these projects.  In his text message, Garcia states, "Pete is now going after another 130MW."  Peter Wheale is NEXTracker's Vice President of Sales in Australia.

44.     In his text, Garcia asks Mitchell for information about "ATI O&M costs and issues."  "O&M costs" is a reference to operation and maintenance costs.  ATI's operation and maintenance costs for its solar trackers are trade secrets and confidential information.  Having knowledge of a competitor's "O&M" costs would be very helpful information in a competitive bidding process.  It would allow a company to know where to price its bid to underbid the competitor.

45.    In violation of his contractual obligations to ATI, Defendant Mitchell is assisting Defendant NEXTracker to compete against ATI in the sale of solar tracker equipment.  Defendant NEXTracker is using ATI's confidential information and trade secrets to unfairly compete against ATI.

**D.    Mitchell's Disclosure of ATI's Confidential and Trade Secret Information Is Inevitable Given His Employment With NEXTracker.**

46.    In connection with his position at ATI, Mitchell was provided with access to ATI's confidential, proprietary, and trade secret information relating to ATI's operations and maintenance costs, supply costs, marketing strategy, product design methodology, cost structure, quality issues, and business development plans such as its bid preparation and contract procurement data.  As a condition of his employment, therefore, Mitchell executed an NDA.

47.    Pursuant to the NDA, Mitchell agreed that he would "protect, safeguard and keep secret any Confidential Information," "only use or disclose Confidential Information as necessary in connection with [his] work for [ATI]," "refrain from using Confidential Information for [his] benefit or the benefit of any third party or in any manner adverse to [ATI's] interests," and "upon termination…return or destroy all Confidential Information which is in [his] possession or control, including all originals and copies thereof, whether maintained in physical or electronic format." Ex. 1 at § 2(a).

48.    The NDA defined ATI's "Confidential Information" as:

> [A]ny and all information concerning the business and affairs of [ATI], whether or not separately identified as "confidential" or "proprietary;" provided, however, that information will not be considered Confidential Information if it is or becomes generally available to the public other than through a breach of this Agreement.   Without limiting the scope of the foregoing, Confidential Information includes nonpublic information about Employer's marketing, business or development plans, financial

data, customer or vendor lists, tax records, and personnel files or
histories.

Ex. 1 at § 2(b).

49.     As described above, Mitchell was fully informed and aware, through the NDA he
signed, that ATI's marketing and business or development plans such as its bid preparation and
contract procurement data are confidential and proprietary and are not to be used or disclosed
except in connection with legitimate ATI business.

50.     The NDA is a valid and enforceable agreement.

51.     At all times, ATI performed any and all obligations required of it under the NDA.

52.     At no time was Mitchell's performance under the NDA excused.

53.     As explained above, Mitchell has been assisting ATI's competitor, NEXTracker, in
its operations and business development.   Upon information and belief, Mitchell is assisting
NEXTracker in its procurement of solar tracking contracts by providing ATI's information for use
as part of NEXTracker's bidding packages.

54.     The text message from NEXTracker's CCO is an inducement to Mitchell to breach
his disclosure obligations owed to ATI and to reveal ATI's confidential data and trade secrets,
despite the fact that Mitchell is under a contractual obligation to keep ATI's information
confidential and to refrain from using it for his own benefit or that of any third party or in any
manner adverse to ATI's interests.

55.     The text message illustrates why Mitchell's position with NEXTracker makes it
inevitable that Mitchell will disclose ATI's confidential data and trade secrets (assuming he has
not already).   Given the work Mitchell performed for ATI, his work for NEXTracker will
inevitably call upon him to use and disclose ATI's confidential information and trade secrets in
violation of the NDA.

56.     Moreover, the circumstances of Mitchell's departure and assistance to NEXTracker reveal the Defendants' improper motive.  Mitchell did not disclose to ATI that he would be assisting NEXTracker and instead misled ATI into thinking that Mitchell would be working instead for NEXTracker's parent company.

57.     ATI is currently submitting bids on numerous projects against Defendant NEXTracker.  Defendant Mitchell's assistance to NEXTracker will provide NEXTracker with an unfair advantage in bid selection.

58.     The Court should enter an emergency temporary restraining order, against Defendant Mitchell and, after a hearing, grant a preliminary and permanent injunction to prevent further harm to ATI by Defendants.

## COUNT ONE

### Violation of Defend Trade Secrets Act (18 U.S.C. § 1836)
### (Against All Defendants)

59.     ATI repeats and alleges each and every allegation above as if fully set forth herein.

60.     The Defend Trade Secrets Act, 18 U.S.C. § 1836, was enacted in May 2016 to, among other things, combat, redress and reduce the threat of, and economic impact caused by, the theft of trade secrets belonging to United States companies occurring both domestically and outside of the United States.

61.     ATI is the owner of certain valuable trade secrets contained in and relating to ATI's marketing and business plans, such as ATI's bidding preparation and contract procurement information.  The details of ATI's bid preparation and contract procurement process, including the details of the operation and maintenance costs for ATI's solar tracking equipment, is extremely valuable in terms of ongoing sales and its ability to competitively bid for and procure various contracts for the design and manufacturing of solar tracking equipment.

62.     ATI's trade secrets are related to ATI's products and services that are used in or intended for use in interstate or foreign commerce.  As stated above, ATI sells its products throughout the United States.  For example, ATI's solar tracking equipment and related support services and technologies are sold throughout the United States.

63.     During his employment at ATI, Mitchell was given access to certain confidential and proprietary information constituting "Trade Secrets" as defined in the Defend Trade Secrets Act (18 U.S.C. § 1836).

64.     The trade secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

65.     Mitchell gained access to ATI's trade secrets in the course of an employee-employer relationship between ATI and Mitchell.  Mitchell was under an obligation to maintain the secrecy of the trade secrets obtained during his employment.

66.     ATI's trade secrets are sufficiently secret to derive economic value from not being generally known or readily accessible by proper means by other persons who can obtain economic value from their disclosure or use.

67.     ATI's trade secrets are the subject of efforts to maintain secrecy or confidentiality that are reasonable under the circumstances, including confidentiality and/or nondisclosure agreements to be signed by any party granted access to ATI's trade secrets.

68.     Defendants know or have reason to know Mitchell acquired ATI's trade secrets such as its bid preparation and contract procurement information—including its pricing, profit margins, costs of production, operations and maintenance costs, pricing concessions, promotional discounts, advertising allowances, volume rebates, marketing concessions, payment terms and rebate incentives—under circumstances giving rise to a duty to maintain the secrecy, or limit the use of, such information.

69.     NEXTracker is a direct competitor with ATI, attempting to bring to market the same type of solar tracking equipment that Mitchell attempted to sell while at ATI.  Mitchell's role at, and assistance to, NEXTracker is comparable and encompasses much of the same work he did as ATI's former Business Development Manager.  As a result, in working at NEXTracker, Mitchell will inevitably rely on, disclose, and make use of ATI's trade secrets related to its bidding preparation and contract procurement plans.

70.     Defendants have used or disclosed, or will use or disclose, these trade secrets without ATI's express or implied consent.

71.     Such use or disclosure of ATI's trade secrets is reckless and malicious as Defendants either know or should know of the confidentiality, ownership and use restrictions on the trade secrets.

72.     NEXTracker used improper means to acquire knowledge of ATI's trade secrets by inducing Mitchell to breach his duty to maintain secrecy over ATI's trade secrets.

73.     As a direct and proximate result of Defendants' current and continued misappropriation of ATI's trade secrets, ATI will suffer imminent and irreparable harm.

74.     Unless Mitchell is enjoined from misappropriating and threatening to misappropriate ATI's trade secrets, Mitchell will continue to cause ATI irreparable harm for which there is no adequate remedy at law.

## COUNT TWO

**Violation of New Mexico Uniform Trade Secrets Act (NMSA 1978, § 57-3A-1 *et seq.*)**
**(Against All Defendants)**

75.     ATI repeats and alleges each and every allegation above as if fully set forth herein.

76.     ATI is the owner of certain valuable trade secrets contained in and relating to ATI's marketing and business plans, such as ATI's bidding preparation and contract procurement information.  The details of ATI's bid preparation and contract procurement process, including the

details of the operation and maintenance costs for ATI's solar tracking equipment, is extremely valuable in terms of ongoing sales and its ability to competitively bid for and procure various contracts for the design and manufacturing of solar tracking equipment.

77.     During his employment at ATI, Mitchell was given access to certain confidential and proprietary information constituting "trade secrets" as defined in NMSA 1978, § 57-3A-2.

78.     The trade secrets are not known to the public and are not readily ascertainable by proper means to persons who could derive value from their disclosure or use.

79.     Mitchell gained accress to ATI's trade secrets in the course of an employee-employer relationship between ATI and Mitchell.  Mitchell was under an obligation to maintain the secrecy of the trade secrets obtained during his employment.

80.     ATI's trade secrets are sufficiently secret to derive economic value from not being generally known or readily accessible by proper means by other persons who can obtain economic value from their disclosure or use.

81.     ATI's trade secrets are the subject of efforts to maintain secrecy or confidentiality that are reasonable under the circumstances, including confidentiality and/or nondisclosure agreements to be signed by any party granted access to ATI's trade secrets.

82.     Defendants know or have reason to know Mitchell acquired ATI's trade secrets such as its bid preparation and contract procurement information—including its pricing, profit margins, costs of production, operations and maintenance costs, pricing concessions, promotional discounts, advertising allowances, volume rebates, marketing concessions, payment terms and rebate incentives—under circumstances giving rise to a duty to maintain the secrecy, or limit the use of, such information.

83.     NEXTracker is a direct competitor with ATI, attempting to bring to market the same type of solar tracking equipment that Mitchell attempted to sell while at ATI.  Mitchell's current role at NEXTracker is comparable and encompasses much of the same work he did as

ATI's former Business Development Manager.  As a result, in working at NEXTracker, Mitchell will inevitably rely on, disclose, and make use of ATI's trade secrets related to its bidding preparation and contract procurement plans.

84.     Defendants have used or disclosed, or will use or disclose, these trade secrets without ATI's express or implied consent.

85.     Such use or disclosure of ATI's trade secrets is reckless and malicious as Defendants either know or should know of the confidentiality, ownership and use restrictions on the trade secrets.

86.     NEXTracker used improper means to acquire knowledge of ATI's trade secrets by inducing Mitchell to breach his duty to maintain secrecy over ATI's trade secrets.

87.     As a direct and proximate result of Defendants' current and continued misappropriation of ATI's trade secrets, ATI will suffer imminent and irreparable harm.

88.     Unless Mitchell is enjoined from misappropriating and threatening to misappropriate ATI's trade secrets, Mitchell will continue to cause ATI irreparable harm for which there is no adequate remedy at law.

## COUNT THREE

### BREACH OF CONTRACT
### (Against Defendant Mitchell)

89.     ATI repeats and alleges each and every allegation above as if fully set forth herein.

90.     Mitchell has breached the May 3, 2013 "Non-Disclosure, Non-Solicitation, and Non-Competition Agreement" (referred to herein as "NDA").  Ex. 1.  The NDA is a valid and enforceable contract.

91.     The NDA prohibits Mitchell from engaging directly or indirectly in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems

both during his employment with ATI and for one year after the termination of his employment with ATI.

92.     As alleged in the paragraphs above, Mitchell has breached the NDA by providing information and assistance to ATI competitors Grupo Clavijo and NEXTracker.

93.     As described above, Mitchell was fully informed and aware, through the NDA he signed, that ATI's marketing and business or development plans such as its bid preparation and contract procurement data are confidential and proprietary and are not to be used or disclosed except in connection with legitimate ATI business.

94.     By engaging in the conduct described above, Mitchell has violated the NDA he signed in May of 2013.

95.     At all times, ATI performed all of its obligations under the NDA.

96.     At no time was Mitchell's performance under the NDA excused.

97.     Further, as a result of Mitchell's contractual breaches, ATI continues to be damaged and irreparably injured, including, without limitation, by the loss of sales and profits it would have earned but for Mitchell's contractual breaches.

98.     As a direct and proximate result of Mitchell's breach of the NDA, ATI has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial and an injunction to prevent further unlawful dissemination of ATI's confidential information and trade secrets.

## COUNT FOUR

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Defendant Mitchell)

99.     ATI repeats and alleges each and every allegation above as if fully set forth herein.

100.    ATI and Mitchell entered in a valid and enforceable contract, namely, the "Non-Disclosure, Non-Solicitation, and Non-Competition Agreement" (referred to herein as "NDA"). Ex. 1.

101.    The NDA prohibits Mitchell from engaging directly or indirectly in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems both during his employment with ATI and for one year after the termination of his employment with ATI.

102.    Pursuant to the NDA, Mitchell also agreed that he would "protect, safeguard and keep secret any Confidential Information," "only use or disclose Confidential Information as necessary in connection with [his] work for [ATI]," "refrain from using Confidential Information for [his] benefit or the benefit of any third party or in any manner adverse to [ATI's] interests," and "upon termination…return or destroy all Confidential Information which is in [his] possession or control, including all originals and copies thereof, whether maintained in physical or electronic format." (Ex. 1 at § 2(a).)

103.    At all times, ATI performed all of its obligations under the NDA.

104.    At no time was Mitchell's performance under the NDA excused.

105.    Mitchell unfairly interfered with ATI's right to receive the benefits of the NDA, including by consulting for ATI's direct competitor while still employed at ATI, assisting ATI's direct competitor NEXTracker upon termination of his employment at ATI, and disclosing ATI's confidential information and trade secrets to NEXTracker.

106.    As a direct and proximate result of Mitchell's breach of the NDA, ATI has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial and an injunction to prevent further unlawful dissemination  of f ATI's confidential information and trade secrets.

## COUNT FIVE

### BREACH OF FIDUCIARY DUTY
### (Against Defendant Mitchell)

107.   ATI repeats and alleges each and every allegation above as if fully set forth herein.

108.   Mitchell was employed as a Business Development Director for ATI with access to ATI's highly valuable business information.  His job responsibilities included procurement contracts or preparing bids, which typically involve close contact with ATI's customers and require access to ATI's confidential bidding information and bidding structure.

109.   As the Business Development Director and employee for ATI, Mitchell owed a fiduciary duty to ATI not to actively exploit his position within the corporation for his own personal benefit or to hinder the ability of ATI to continue the business, or a subset thereof, for which it was developed.

110.   Mitchell breached his fiduciary duty to ATI months before offering his resignation by diverting time and resources to consult with Grupo Clavijo while continuing to collect compensation from ATI.

111.   Mitchell also breached his fiduciary duty to ATI by assisting ATI's direct competitor NEXTracker upon termination of his employment at ATI, and disclosing ATI's confidential information and trade secrets to NEXTracker.

112.   As a result of Mitchell's breach of his fiduciary duty, ATI has suffered and continues to suffer substantial damages, the amount of which will be determined at a later date.

### COUNT SIX

### TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Defendants NEXTracker and Garcia)

113.   ATI repeats and alleges each and every allegation above as if fully set forth herein.

114.    On or about May 3, 2013, Mitchell executed a "Non-Disclosure, Non-Solicitation, and Non-Competition Agreement" (referred to herein as "NDA"). Ex. 1. The NDA prohibits him from engaging directly or indirectly in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems both during his employment with ATI and for one year after the termination of his employment with ATI.

115.    Upon information and belief, Defendants NEXTracker and Garcia knew of Mitchell's obligations under the NDA.

116.    Defendants NEXTracker and Garcia interfered with ATI's contractual relationship with Mitchell by seeking Mitchell's assistance in NEXTracker's operations in violation of Mitchell's obligations under the NDA.

117.    Pursuant to the NDA, Mitchell also agreed that he would "protect, safeguard and keep secret any Confidential Information," "only use or disclose Confidential Information as necessary in connection with [his] work for [ATI]," "refrain from using Confidential Information for [his] benefit or the benefit of any third party or in any manner adverse to [ATI's] interests," and "upon termination…return or destroy all Confidential Information which is in [his] possession or control, including all originals and copies thereof, whether maintained in physical or electronic format." (Ex. 1 at § 2(a).)

118.    As described above, Mitchell was fully informed and aware, through the NDA he signed, that ATI's marketing and business or development plans such as its bid preparation and contract procurement data are confidential and proprietary and are not to be used or disclosed except in connection with legitimate ATI business.

119.    Defendants NEXTracker and Garcia intentionally disrupted and continue to intentionally disrupt ATI's contractual relationship with Mitchell.

120.    Defendants NEXTracker and Garcia previously solicited, and upon information and belief continue to solicit, Mitchell's assistance notwithstanding their knowledge that Mitchell is

prohibited from assisting ATI's competitors for one year following termination of his employment at ATI.

121.    Defendants NEXTracker and Garcia previously requested, and upon information and belief continue to request and receive from Mitchell ATI's confidential information and trade secrets, notwithstanding their understanding that Mitchell is prohibited from sharing such information.

122.    The intentional acts of Defendants NEXTracker and Garcia have actually and proximately caused a disruption and breach of the contractual relationship between ATI and Mitchell.

123.    The aforementioned acts of Defendant NEXTracker and Garcia were and continue to be willful, oppressive, fraudulent, and malicious, warranting an award of punitive damages in addition to the actual damages suffered by ATI.

124.    Defendant NEXTracker's and Garcia's acts have resulted in a loss of beneficial contractual relationships and actual profits to ATI.

125.    As a direct and proximate result of Defendants' interference, ATI has sustained significant economic harm and damages.

126.    Further, as a result of Defendants' interference, ATI continues to be damaged and irreparably injured, including, without limitation, by the loss of sales and profits it would have earned but for Defendants' continuing improper actions.

127.    As a result of the foregoing, ATI has sustained severe economic injury for which it is entitled to monetary compensation in an amount to be determined at trial and an injunction to prevent further unlawful dissemination of ATI's confidential information and trade secrets.

## COUNT SEVEN

### CONVERSION
### (Against All Defendants)

128.    ATI repeats and alleges each and every allegation above as if fully set forth herein.

129.    ATI has rightful ownership and right of possession over certain valuable trade secrets contained in and relating to ATI's marketing and business plans, such as ATI's bidding preparation and contract procurement information.

130.    Defendants intentionally exercised dominion over ATI's confidential marketing and business plans, including ATI's bidding preparation and contract procurement information.

131.    As a result, ATI was dispossessed of its right to the exclusive use and possession of its marketing and business plans, including its bidding preparation and contract procurement information.

132.    Defendants' tortious conduct with regards to ATI's marketing and business plans, including its bidding preparation and contract procurement information, is the proximate cause of damages suffered by ATI.

133.    Defendants' tortious conduct constituted the conversion of an identifiable sum of money, the amount of which is to be determined at trial.

134.    Defendants' tortious conduct was not privileged or excused.

135.    Defendants' tortious conduct was willful and malicious, warranting an award of punitive damages in addition to the full value of the converted property.

## COUNT EIGHT

### UNJUST ENRICHMENT/RESTITUTION
### (Against All Defendants)

136.    ATI repeats and alleges each and every allegation above as if fully set forth herein.

137.    Defendants have been enriched and have benefitted from their use of ATI's valuable trade secrets, including ATI's marketing and business plans, such as ATI's bidding preparation and contract procurement information.

138.    Defendants have been enriched at ATI's expense, as ATI expends significant resources to competitively bid on various projects, whatever their scale, location or requirements. The details of ATI's bid preparation process, including the details of the operation and maintenance costs for ATI's solar tracking equipment, is extremely valuable in terms of ongoing sales and its ability to procure various contracts for the design and manufacturing of solar tracking equipment.

139.    Given Defendants' inequitable misconduct, including their misappropriation of ATI's confidential information and trade secrets to intentionally and knowingly steal, exploit and utilize for their own financial benefit ATI's confidential information and trade secrets, permitting Defendants to retain the profits they have gained (and will continue to gain) from procuring contracts using ATI's confidential information and trade secrets would be contrary to equity and good conscience.

140.    As a result, ATI is entitled to an order imposing a constructive trust and requiring Defendants to disgorge any profits obtained, now or in the future, as a result of their improper actions, including any profits obtained as a result of procuring contracts using ATI's confidential information and trade secrets.

### JURY DEMAND

141.    ATI requests trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, ATI seeks the following relief:

1.     A temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Defendants NEXTracker and Mitchell from using or disclosing ATI's confidential information or trade secrets.

2.     Preliminary and permanent injunctive relief enjoining NEXTracker from encouraging, causing or permitting Mitchell to violate contractual obligations Mitchell owes to ATI, including his obligation to refrain from directly or indirectly engaging in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems, such as NEXTracker.

3.     A temporary restraining order, preliminary injunction, and/or a permanent injunction restraining and enjoining NEXTracker and Mitchell from altering, destroying or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

4.     A temporary restraining order, preliminary, and permanent injunctive relief requiring the immediate return of ATI's stolen data, in forensically sound fashion.

5.     An accounting to establish, and an order requiring, restitution and/or disgorgement of the sums by which Defendants have been unjustly enriched.

6.     Compensatory damages, past and future, in an amount to be determined at trial.

7.     Exemplary and punitive damages for Defendants' willful and malicious acts.

8.     Pre-judgment and post-judgment interest at the maximum rate allowed by law.

9.     Attorneys' fees and costs incurred by virtue of this action.

10.     Such other and further relief as the Court may deem appropriate under the circumstances.

Dated:  January 17, 2017

Respectfully Submitted,

THOMPSON, HICKEY, CUNNINGHAM,
CLOW, APRIL & DOLAN, P.A.

By: _____
     David F. Cunningham
     Daniel H. April
     460 St. Michael's Drive, Suite 1000
     Santa Fe, New Mexico 87505
     (505) 988-2900
     (505) 988-2901 fax

Jeffrey Sinek (*pro hac vice* pending)
Tanya L. Greene (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
(213) 680-8400
(213) 680-8500  fax

Attorneys for Plaintiff
ARRAY TECHNOLOGIES, INC.