IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| ARRAY TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>COLIN MITCHELL, *et al.*<br><br>Defendants. | Civil Action No. 1:17-cv-00087-JAP-LF |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS III-X OF ARRAY TECHNOLOGIES, INC.'S AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL <u>PROCEDURE 12(B)(6)</u>**

Frank Scherkenbach (admitted *pro hac vice*)
FISH AND RICHARDSON PC
One Marina Park Dr.
Boston, MA 02210-1878
Tel:    (617) 521-7883
Email: scherkenbach@fr.com


Betty Chen (admitted pro hac vice)
FISH & RICHARDSON PC
500 Arguello St., Ste. 500
Redwood City, CA 94063
Tel:    (650) 839-5070
Email: bchen@fr.com


*Counsel for Defendants NEXTracker, Inc.,
Daniel S. Shugar, Marco Garcia, Flextronics
International USA, Inc., and Scott Graybeal*

Andrew G. Fiorella (admitted *pro hac vice*)
BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF LLP
200 Public Sq., Ste.2300
Cleveland, OH 44114
Tel:    (216) 363-4500
Email: afiorella@beneschlaw.com

*Counsel for Defendants NEXTracker, Inc.,
Flextronics International USA, Inc., Scott
Graybeal, and Colin Mitchell*


Robert E. Hanson
Matthew E. Jackson
PEIFER, HANSON & MULLINS, P.A.
P.O. Box 25245
Albuquerque, NM 87125-5245
Tel:    (505) 247-4800
Email: rhanson@peiferlaw.com
          mjackson@peiferlaw.com

*Counsel for Defendants*

# TABLE OF CONTENTS

I.   BACKGROUND ......................................................................................................... 1

   A.  NEXTracker's Growth in the Solar Tracking Industry........................................ 1

   B.  ATI's Position in the Solar Tracking Industry................................................... 3

   C.  ATI's Allegations............................................................................................... 3

II.  LEGAL STANDARD................................................................................................ 5

III.  ARGUMENT ........................................................................................................... 6

   A.  ATI Has Not Adequately Pleaded Breach With Respect To Its Confidential Information, or Damages for its Breach of Contract Claim (Count III) .................................................. 6

   B.  ATI 's Breach of Covenant of Good Faith and Fair Dealing Claim (Count IV) Fails for the Same Reasons as ATI's Breach of Contract Claim ...................................................... 9

   C.  ATI Has Not Plead Any Relationship That Gives Rise to a Fiduciary Duty, Any Breach of Fiduciary Duty, or Any Damages for its Breach of Fiduciary Duty Claim (Count V) .................................................................................................... 10

   D.  ATI Fails to Adequately Plead Causation, Breach, Damages, or Knowledge Elements Required for a Claim of Tortious Interference with Contract (Count VI) ....................... 13

   E.  ATI Claim of Conversion (Count VII) is Preempted by ATI's Trade Secret Misappropriation Claims ............................................................................... 14

   F.  ATI Fails to Adequately Plead Any Benefit to NEXTracker Required for a Claim of Unjust Enrichment/Restitution, Which is Preempted by ATI's Other Claims (Count VIII) .................................................................................................. 16

   G.  ATI Fails to Plead with Particularity, and to Adequately Plead Any Misrepresentation for a Claim of Fraud and Constructive Fraud (Count IX) ...................................... 17

   H.  ATI Fails to Adequately Plead the Facts Required for a Claim Under the New Mexico Unfair Practices Act (Count X) ..................................................................... 19

IV.  CONCLUSION........................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abreu v. N.M. Children, Youth and Families Dep't,*
 797 F. Supp. 2d 1199 (D.N.M. 2011) .........................................................................6

*Armijo v. State, Dept. of Transp.,*
 Civ. 08-0336, 2009 WL 1329192 (D.N.M. April 6, 2009) ...................................9

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...................................................................................................6

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................................................5

*Brereton v. Bountiful City Corp.,*
 434 F.3d. 1213 (10th Cir. 2006) ...................................................................12, 19

*Cartel Asset Mgmt. v. Ocwen Fin. Corp.,*
 249 F.App'x (10th Cir. 2007) ..................................................................................7

*City of Raton v. Arkansas River Power Authority,*
 611 F.Supp. 2d. 1190 (D.N.M. 2008) ...................................................................9

*Diversey Corp. v. Chem–Source Corp.,*
 965 P.2d 332 (N.M. Ct. App. 1998).......................................................................19

*Ettenson v. Burke,*
 17 P.3d 440 (N.M. Ct. App. 2001) ........................................................................13

*Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.,*
 681 F. Supp. 2d 694 (S.D.W. Va. 2009)...............................................................9

*Gaedeke Holdings VII Ltd v. Baker,*
 683 F. App'x. 677 (10th Cir. 2017) .................................................................4, 17

*Hydro Resources Corp. v. Gray,*
 173 P.3d 749 (2007) .................................................................................................10

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,*
 171 Cal. App. 4th 939 (2009) .................................................................................15

*Las Luminarias of the New Mexico Council of the Blind v. Isengard,*
 587 P.2d 444 (N.M. Ct. App. 1978) ......................................................................12

*Leon v. Kelly*,
    No. CIV 07-0467, 2008 WL 5978926 (D.N.M. Dec. 8, 2008) ................................................10

*Lindasy v. Thomson*,
    275 F. App'x 744 (10th Cir. 2007) ................................................................................13, 17

*Lohman v. Daimler-Chrysler Corp.*,
    166 P.3d 1091 (N.M. Ct. App. 2007) ................................................................................19

*McCasland v. Prather*,
    585 P.2d 336 (N.M. Ct. App. 1978) ..................................................................................5

*MEI Techs., Inc. v. Detector Networks Int'l, LLC*,
    No. CIV 09-0425, 2009 WL 10665560 (D.N.M. July 6, 2009) ...........................10, 11, 12, 18

*Moody v. Stribling*,
    127 N.M. 630 (N.M. Ct. App. 1999) ................................................................................12

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*,
    164 F.3d 736 (2d Cir. 1998) ...........................................................................................14

*Nwachukwu v. Liberty Bank*,
    No. 3:16-CV-00704 (CSH), 2017 WL 2873048 (D. Conn. July 5, 2017) ............................8

*Ontiveros Insulation Co. v. Sanchez*,
    3 P.3d 695 (N.M. Ct. App. 2000) ....................................................................................16

*Premier Medical Enterprise Solutions, Inc. v. New Mexico Software Inc.*,
    CIV-09-0165, 2010 WL 11500833 (D.N.M Oct. 25, 2010) .................................................11

*QSRSoft, Inc. v. Restaurant Technology, Inc.*,
    No. 06-C-2734, 2006 WL 3196928 (N.D. Ill. Nov. 2, 2006) (the Illinois
    Uniform Trade Secrets Act preempts a claim for conversion of trade secrets) .....................14

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007) ........................................................................................6

*Sanders v. FedEx Ground Package Sys., Inc.*,
    188 P.3d 1200 (N.M. 2008) ..............................................................................................9

*Silvaco Data Systems v. Intel Corp.*,
    184 Cal.App. 4th 210 (Cal. Ct. App. 2010) .......................................................................15

*Skyline Potato Co. v. Tan-O-On Mktg., Inc.*,
    879 F. Supp. 2d 1228 (D.N.M. 2012) ...............................................................................17

*Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*,
    No. CV 15-00218, 2015 WL 12803775 (D.N.M. June 25, 2015) .........................................16

*SunPower Corp. v. SolarCity Corp.*,
No. 12–cv–00694, 2012 WL 6160472 (N.D.Cal. Dec.11, 2012) ...........................................15

*Talbot v. Sentinel Ins. Co., Ltd.*,
2012 WL 1068763 (D.Nev. Mar. 29, 2012) ............................................................................1

*Turpin v. Smedinghoff*,
117 N.M. 598 (1994) ............................................................................................................12

*Unisource Worldwide, Inc. v. Swope*,
964 F. Supp.2d. 1050 (D. Ariz. 2013) ..................................................................................15

*In re Vaughan Co., Realtors*,
477 B.R. 206 (Bankr. D.N.M. 2012) ......................................................................................1

*Wagner Equip. Co. v. Wood*,
No. CV 11-466, 2012 WL 12863314 (D.N.M. July 2, 2012)................................................18

*Williams v. Stewart*,
112 P.3d 281 (N.M. Ct. App. 2005) ......................................................................................17

*Wolf v. Perry*,
339 P.2d 679 (N.M. 1959) ....................................................................................................13

**Statutes**

California UTSA .......................................................................................................15, 16

Defend Trade Secrets Act (18 U.S.C. § 1836) ...........................................................................3

New Mexico Unfair Practices Act ......................................................................................19, 20

New Mexico Uniform Trade Secrets Act (NMSA 1978, § 57-3A-1 et seq.) ...........................3, 4

Uniform Trade Secrets Act ......................................................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 9(b) ..................................................................................................................18

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 6, 13

"Non-Disclosure, Non-Solicitation and Non-Competition Agreement"
("Agreement") .........................................................................................................4

Rule 12(a)(4) ............................................................................................................................1

Defendants NEXTracker ("NEXTracker"), Marco Garcia ("Garcia"), Daniel S. Shugar ("Shugar"), Scott Graybeal ("Graybeal"), Colin Mitchell ("Mitchell") and Flextronics International U.S.A. ("Flex") (collectively "Defendants") respectfully submit this memorandum of points and authorities in support of their request for the Court to dismiss Counts III-X of Plaintiff Array Technologies, Inc.'s ("ATI") Amended Complaint (D.I. 52) ("Amended Complaint") for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).[1]

I.   **BACKGROUND**

   A.  **NEXTracker's Growth in the Solar Tracking Industry**

NEXTracker was founded in 2013 to transform the solar tracking industry with breakthrough technology and exceptional customer service that enables solar technology to be an effective, flexible, and cost-efficient solution for power plants around the world. NEXTracker's product introduced several key innovations to the tracking industry, ultimately benefiting customers with lower cost, faster installation, and greater energy production. These innovations included the first tracker with 80+ solar panels, the first self-grounded tracker, the first self-powered tracker, and system architecture that enabled unencumbered access to the solar array field for easy maintenance. Customers responded very favorably to NEXTracker's products as soon as they were introduced, and NEXTracker quickly grew to lead global share in the tracker

---

[1] Defendants' deadline to answer ATI's claims as to Counts I and II is tolled by way of the instant motion. *See In re Vaughan Co., Realtors*, 477 B.R. 206, 226 (Bankr. D.N.M. 2012) (holding that a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under Rule 12(a)(4)); *see also Talbot v. Sentinel Ins. Co., Ltd.*, 2012 WL 1068763, *4 (D.Nev. Mar. 29, 2012) (surveying the case law).

industry by 2015, according to reports by Green Tech Media (a leading energy market research firm).



NEXTracker's NX Horizon System

In recognition for its impact on the solar industry, NEXTracker was recognized with the 2016 Edison Award (named after Thomas Edison), which honors the "best in innovation and excellence in the development of new products and services."  NEXTracker was also honored by PV Magazine with an "Array Changing" technology award for its innovative NX Fusion solar tracker.  As a testament to the innovation of its systems, NEXTracker currently holds at least eight patents that cover its solar tracking systems and eighteen patent applications pending for issuance by the United States Patent and Trademark Office.

In September 2015, Flex (which is not a solar tracking company) acquired NEXTracker to augment its Flex Energy business.  Since then, NEXTracker has operated as an independent subsidiary of Flex.  Specifically, Flex has maintained NEXTracker as a separate entity with an independent location, set of officers, accounting system, and reporting structure.  Flex has not ventured into the design or manufacture of solar tracking equipment or systems, but has rather allowed NEXTracker to continue growing as an independent subsidiary in the solar tracking industry.

**B.  ATI's Position in the Solar Tracking Industry**

ATI was founded in 1989 and provides solar tracking solutions in competition with NEXTracker.  For several years prior to 2005, ATI enjoyed the position as a global sales leader of independent manufacturers of tracker systems, in part because a large percentage of the market was directly served by major, vertically integrated companies that manufactured trackers directly for their own projects – so the overall solar tracker market for independent manufacturers was a fraction of the current size.  However, ATI began losing significant sales to NEXTracker in 2014 in large part due to NEXTracker's innovative technology and engaging customer service that enabled customers to successfully develop their projects with greater profitability.  Meanwhile, ATI's solution was technologically dated, significantly more expensive, and less efficient.  Furthermore, ATI failed to provide customer service that engaged with its customers every step of the way from pre-sales through installation and beyond.

**C.  ATI's Allegations**

The crux of ATI's allegations in its Amended Complaint[2] center around an individual, Colin Mitchell, who worked for ATI from May 2013 to July 2016, for Flex from September 2016 to September 2017, and for NEXTracker from August 2017 to present.  ATI alleges that, in 2013, Mitchell entered into a "Non-Disclosure, Non-Solicitation and Non-Competition Agreement" ("Agreement") with ATI.  (D.I. 52 at ¶¶ 28-30).  ATI points to two provisions from

---

[2] On January 1, 2017, ATI filed a Complaint against Colin Mitchell, NEXTracker, and Marco Garcia. (D.I. 1).  It charged Mitchell with breach of contract, breach of the covenant of good faith and fair dealing, and breach of fiduciary duty; charged NEXTracker and Garcia with tortious interference with contract; and charged all three with violations of the Defend Trade Secrets Act (18 U.S.C. § 1836) and New Mexico Uniform Trade Secrets Act (NMSA 1978, § 57-3A-1 et seq.), conversion, and unjust enrichment/restitution.  (D.I. 52 at ¶¶ 59-140).  On March 10, 2017, Garcia, Mitchell, and NEXTracker answered ATI's Complaint.  (D.I. 20).  In August, ATI filed an Amended Complaint adding defendants Shugar, Graybeal, and Flex, as well as fraud and unfair practices claims. (D.I. 52).

3

the Agreement that are relevant to the claims in this action: 1) a non-disclosure provision that requires Mitchell to follow certain safeguards for confidential information; and 2) a one-year non-compete provision that was in force from July 2016 to July 2017 and precluded Mitchell from engaging in the ownership or operation of a solar tracking business. (D.I. 1 at ¶ 30).

ATI alleges that Mitchell violated the Agreement and misappropriated trade secrets by "providing information and assistance to ATI competitors Grupo Clavijo and NX" (D.I. 52 at ¶ 103), and by "us[ing] and disclos[ing] ATI's confidential information for purposes unrelated to legitimate ATI business." (D.I. 52 at ¶ 104).  Notably, ATI never alleges that Mitchell has actually disclosed any of ATI's confidential information to NEXTracker.  For instance, ATI only contends that "text messages and emails illustrate why Mitchell's position with NEXTracker makes it inevitable that Mitchell *will disclose* ATI's confidential data and trade secrets (assuming he has not already) [,]" and that "his work for NX *will* inevitably call upon him to use and disclose ATI's confidential information and trade secrets[.]" (D.I. 52 at ¶ 66) (emphasis added).

ATI also alleges that the defendants engaged in a "conspiracy" that would allow Mitchell to claim that he "was employed by Flex and not NX" while Mitchell's non-compete provision was still in force. (D.I. 52 at ¶ 125).  As explained in more detail below, while the Amended Complaint makes numerous allegations against Defendants Garcia, Shugar, and Graybeal as having engaged in this conspiracy, it does not even specify who Garcia, Shugar, and Graybeal are, what duties they could have held towards ATI, or the basis for alleging that those duties existed.  For example, ATI has asserted that these Defendants have breached a fiduciary duty to ATI even though ATI has not (and cannot) allege any facts that could give rise to a fiduciary relationship existing between those parties.

The overarching and fatal deficiency in ATI's story, however, is the utter lack of any damages or harm to ATI based on any of the allegations in the Amended Complaint. Even taking all of ATI's allegations as true (which they are not), the Amended Complaint does not include any facts relating to any specific lost sales, nor is there even an attempt to quantify actual revenue or profits ATI could have earned but for the Defendants' alleged conduct. For example, while the Amended Complaint makes much of Mitchell purportedly being put in charge of the AES Solar account during the one-year time frame while Mitchell's non-compete was in force, ATI has not alleged any damages arising from that action. To put a finer point to it, ATI has *not* – and cannot – claim:

- that NEXTracker, rather than ATI, was awarded the AES Solar contract or any other account which NEXTracker allegedly asked Mitchell to handle (*see* D.I. 52 at ¶¶ 46-47);

- that NEXTracker, rather than ATI, won any specific business based on any assistance from or work by Mitchell (*see* D.I. 52 at ¶¶ 49-52);

- that ATI has suffered any lost sales based on any purported disclosure of confidential or trade secret information by Mitchell;

- that ATI has suffered any lost sales due to any breach of Mitchell's one year non-compete; or

- that NEXTracker has experienced any benefit at ATI's expense based on any of the events alleged in the Amended Complaint.

## II.   LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), a court must inquire whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plaintiff must provide "more than labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action," because "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* at 555 (internal quotations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id.*  When plaintiffs fail to "nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed."  *Id.* at 570.

Plausibility means that a plaintiff must plead facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

## III.   ARGUMENT

### A.  ATI Has Not Adequately Pleaded Breach With Respect To Its Confidential Information, or Damages for its Breach of Contract Claim (Count III)

ATI has not plead any facts showing that Mitchell breached his Agreement with ATI by misappropriating confidential information or that ATI suffered any damages as a result of Mitchell's actions or inactions.  Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011).  "[A]

complaint on breach of contract must allege . . . damages suffered as a result of defendant's breach." *McCasland v. Prather*, 585 P.2d 336, 338 (N.M. Ct. App. 1978).

First, ATI alleges that Mitchell breached the Agreement because: (1) "[t]he NDA prohibits Mitchell from engaging directly or indirectly in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems both during his employment with ATI and for one year after the termination of his employment with ATI" (D.I. 52 at ¶ 102)[3]; and (2) he allegedly "provid[ed] information and assistance to ATI competitors Grupo Clavijo and NEXTracker" (D.I. 52 at ¶ 103) in contravention of the Agreement which purportedly provides that "ATI's confidential information is not to be used or disclosed except in connection with legitimate ATI business." (D.I. 52 at ¶ 102).

The second basis alleged to constitute breach (misuse of confidential information) is not adequately pleaded. ATI merely states the conclusion, without alleging any facts plausibly supporting the conclusion. What specific information did Mitchell allegedly misappropriate? How did he misuse it? Why is it confidential? The Amended Complaint does not say. Instead, ATI betrays its real complaint when it alleges that Mitchell's assistance to NEXTracker "*will* provide NX with an unfair advantage in bid selection" (D.I. 52 at ¶ 68) (emphasis added); that "[t]hese text messages and emails illustrate why Mitchell's position with NX *makes it inevitable that Mitchell will* disclose ATI's confidential data and trade secrets (assuming he has not already)" (D.I. 52 at ¶ 66) (emphasis added); and that "his work for NX *will inevitably call upon him to use and disclose* ATI's confidential information and trade secrets" (D.I. 52 at ¶ 66)

---

[3] The Agreement states: "**Non-Competition Agreement**. During the period of Employee's employment with Employer, and **for one year after termination of such employment** for whatever reason, with or without cause, Employee shall not, directly or indirectly engage in the ownership or operation of a business which designs and/or manufactures solar tracking equipment or systems . . ." (D.I. 1-1 at 3 (second emphasis added)).

(emphasis added).  Fear of breach is not breach.  ATI has failed to plead facts showing that

Mitchell in fact breached any agreement by disclosing purportedly confidential information.

        Second, and regardless whether ATI has adequately pleaded breach, nowhere in ATI's

Amended Complaint does ATI plead or state that it suffered any actual or specific damages.

Rather, the Amended Complaint alleges in a conclusory manner that "as a result of Mitchell's

contractual breaches, ATI continues to be damaged and irreparably injured, including without

limitation, by the loss of sales and profits it would have earned but for Mitchell's contractual

breaches[,]" and that "ATI has sustained severe economic injury for which it is entitled to

monetary compensation[.]"  (D.I. 52 at ¶¶ 108-109).  These are boilerplate conclusions.  ATI

fails to point to any actual "loss of sales or profits it would have earned," or any specific "severe

economic injury" that it sustained.  It identifies no customers or potential customers, no specific

opportunities, and no facts from which the Court could plausibly conclude that ATI has in fact

been damaged.  If there had been any damage, let alone "severe economic injury", surely ATI

could identify it.

        ATI's damages allegation, without more, is too speculative and remote.  The Amended

Complaint does not even allege that NEXTracker was ultimately awarded the AES Solar contract

or any of the jobs in Australia it wanted to pitch, (*see* D.I. 52 at ¶¶ 46-56), over ATI.

Additionally, as noted above, ATI repeatedly admits that disclosure of confidential information

has not yet actually occurred to date (D.I. 52 at ¶¶ 66-68).  ATI's allegations relating to any

purported damages are simply "legal conclusion[s] couched as [ ] factual allegation[s]" which

the court is "not bound to accept as true."  *See Twombly*, 550 U.S. at 555.  Accordingly, ATI's

breach of contract claim should be dismissed for failure to plead the essential element of

damages.  *See Nwachukwu v. Liberty Bank*, No. 3:16-CV-00704 (CSH), 2017 WL 2873048, at

*10 (D. Conn. July 5, 2017) (dismissing complaint because damages were based on "mere speculation"); *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 726 (S.D.W. Va. 2009) ("Recoverable damages in an action for breach of contract cannot be too remote, contingent or speculative, but must consist of actual facts from which a reasonably accurate conclusion could be drawn regarding the cause and amount of such damages.").

### B. ATI's Breach of Covenant of Good Faith and Fair Dealing Claim (Count IV) Fails for the Same Reasons as ATI's Breach of Contract Claim

Without a viable breach of contract claim, ATI's claim for breach of covenant of good faith and fair dealing (Count IV) must be dismissed.  Under New Mexico law, a breach of covenant of good faith and fair dealing claim generally rises and falls with a breach of contract claim.  *City of Raton v. Arkansas River Power Authority*, 611 F.Supp. 2d 1190, 1207 (D.N.M. 2008) (finding that a breach of covenant of good faith and fair dealing is tied with a breach of contract claim); *see also Armijo v. State, Dept. of Transp.*, Civ. 08-0336, 2009 WL 1329192, at * 7 (D.N.M. April 6, 2009) ("Given that the breach-of-contract claim is inadequate, the Court does not believe the dependent claim for breach of the covenant of good faith and fair dealing can stand.").  For example, in *Sanders v. FedEx Ground Package Sys., Inc.*, the court found that a claim for the breach of the implied covenant "requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1203 (N.M. 2008) (internal citations omitted). A breach of covenant of good faith and fair dealing is a claim for violating the spirit, but not necessarily the terms, of the bargain. *See id*.

Given that ATI's breach of covenant of good faith and fair dealing claim is entirely coextensive with its breach of contract claim (D.I. 52 at ¶¶ 111-117), ATI's breach of covenant

of good faith and fair dealing claim must be dismissed for the same reasons as its breach of contract claim.

### C. ATI Has Not Plead Any Relationship That Gives Rise to a Fiduciary Duty, Any Breach of Fiduciary Duty, or Any Damages for its Breach of Fiduciary Duty Claim (Count V)

The Amended Complaint contends that all six Defendants breached a fiduciary duty to ATI. To properly plead a breach of fiduciary duty, ATI must allege that (1) the Defendants owed a fiduciary obligation to ATI, and (2) that the Defendants committed an action in violation of their fiduciary duty. *See MEI Techs., Inc. v. Detector Networks Int'l, LLC*, No. CIV 09-0425, 2009 WL 10665560, at *2 (D.N.M. July 6, 2009).

*First*, ATI does not even attempt to plead the existence of any type of fiduciary duty that any of the Defendants other than Mitchell could possibly owe to ATI. (D.I. 52 at ¶¶ 118-128). The Amended Complaint never once alleges that NEXTracker, Flex, Shugar, Graybeal, and Garcia owed any fiduciary obligation to ATI. Indeed, those Defendants have no past or present relationship with ATI that could possibly give rise to a fiduciary relationship. Thus, ATI has failed to state a claim of breach of fiduciary duty at least as to NEXTracker, Flex, Shugar, Graybeal, and Garcia.

*Second*, as for Mitchell, ATI alleges that Mitchell's position at ATI as a "Business Development Director and employee" somehow created a fiduciary duty to ATI. (D.I. 52 at ¶ 120). However, under New Mexico law, a fiduciary relationship is a "particularly stringent relationship, and the law accordingly does not make all business relationships or prospective business relationships into fiduciary relationships." *Leon v. Kelly*, No. CIV 07-0467, 2008 WL 5978926, at *6 (D.N.M. Dec. 8, 2008). Even the fact that ATI and Mitchell had entered into an agreement does not, in and of itself, give rise to a fiduciary relationship. *See Hydro Resources*

*Corp. v. Gray*, 173 P.3d 749, 760 (2007) (noting that not all contracts create fiduciary relationships).  Fiduciary duties do not arise out of every contract.  *See Premier Medical Enterprise Solutions, Inc. v. New Mexico Software Inc*., CIV-09-0165, 2010 WL 11500833, at *7 (D.N.M Oct. 25, 2010) ("The parties to every contract repose trust and confidence in each other, and yet fiduciary duties do not arise out of every contract.").  Therefore, without more, ATI has failed to plead the essential element of breach of fiduciary duty even by Mitchell, namely that a fiduciary relationship exists between ATI and Mitchell.

 *Third*, even assuming any fiduciary relationship exists, ATI's Amended Complaint fails to allege any breach of such a relationship.  ATI does not even attempt to make such a showing for the Defendants other than Mitchell.  As for Mitchell, ATI states that "Mitchell breached his fiduciary duty to ATI before offering his resignation by diverting time and resources to consult with Grupo Clavijo and NX . . . ." (D.I. 52 at ¶ 121).  But ATI does not plead sufficient facts to show that Mitchell's pre-resignation contacts with Grupo Clavijo and NEXTracker were anything other than Mitchell's attempts to seek alternate employment.  It is well-settled law that "an employee may lawfully seek other employment or even make arrangements to compete with his employer" without breaching any fiduciary duty.  *MEI Techs.*, 2009 WL 10665560, at *2.  ATI's Amended Complaint does not explain how consulting with a potential new employer regarding an employee's job prospects or making arrangements to transition to a new employer, constitute a breach of fiduciary duty to an employer.

 ATI also alleges that Mitchell breached his fiduciary duty by "misappropriating ATI's confidential information *while still employed at ATI*."  With respect to any alleged files downloaded by Mitchell, ATI does not adequately plead facts showing that any such download was not performed in connection with Mitchell's employment with ATI.  Additionally, ATI does

not adequately plead what was contained in any such files and why they may have contained ATI confidential information.

ATI further contends that Mitchell breached his fiduciary duty to ATI after he had terminated his employment with ATI.  But "an employee does not violate his duty of loyalty when he merely organizes a corporation during his employment to carry on a rival business after the expiration of this term of employment." *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 587 P.2d 444, 449 (N.M. Ct. App. 1978).  ATI does not plead facts showing how any of the files that Mitchell allegedly downloaded were used in violation of any duty he owed to ATI, or how Mitchell's actions were not simply an attempt to carry out his post-ATI employment duties.  ATI's allegations are, yet again, no more than insufficient "labels and conclusions[.]"  *See Twombly*, 550 U.S. at 555.

***Fourth***, even if ATI intends to argue that Defendants owed and breached a fiduciary duty (which they have not), ATI must adequately plead that ATI was damaged by such a breach.  *See MEI Techs.*, 2009 WL 10665560, at *2 (holding that damages is an element of breach of fiduciary duty); *Moody v. Stribling*, 127 N.M. 630, 638 (N.M. Ct. App. 1999) ("To be actionable for damages, harm must also result from the breach."); *see also Turpin v. Smedinghoff*, 117 N.M. 598, 601 (1994) (showing of harm is required).  But, as previously discussed, ATI's allegations regarding damages are deficient with respect to all Defendants, including Mitchell.

Even if provided a chance to amend, ATI would not be able to allege any type of fiduciary relationship between ATI and the Defendants that would give rise to a breach of fiduciary duty claim.  Accordingly, ATI's breach of fiduciary duty claim should be dismissed with prejudice.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule

12

12(b)(6) and granting leave to amend would be futile."); *see also Lindasy v. Thomson*, 275 F. App'x 744, 747 (10th Cir. 2007) (upholding grant of dismissal with prejudice where Plaintiff had wholly failed to state actionable claims).

### D. ATI Fails to Adequately Plead Causation, Breach, Damages, or Knowledge Elements Required for a Claim of Tortious Interference with Contract (Count VI)

ATI alleges that Defendants NEXTracker, Garcia, Shugar, and Flex have tortiously interfered with the contractual relationship between ATI and Mitchell.  A claim for tortious interference with an existing contractual relationship requires a showing that: (i) the defendant had knowledge of the existing contract; (ii) the contract was breached; (iii) the defendant played an active and substantial role in causing the plaintiff to lose the benefits of the contract; (iv) damages flowed from the breached contract; and (v) the defendant induced the breach without justification or privilege to do so.  *See Ettenson v. Burke*, 17 P.3d 440, 446 (N.M. Ct. App. 2001); *Wolf v. Perry*, 339 P.2d 679, 681–82 (N.M. 1959).  Importantly, a plaintiff seeking to hold a defendant liable for tortious interference with a contract must also allege "that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof."  *Wolf*, 339 P.2d at 682 (emphasis added) (internal citations omitted).

In its Amended Complaint, ATI has failed to adequately plead facts to state a claim for tortious interference with a contract because the Amended Complaint does not specify Garcia, Shugar, and Graybeal's relationship to NEXTracker or Flex, and why any alleged knowledge they may have had regarding the Agreement can be imputed to NEXTracker and Flex.  (D.I. 52 at ¶¶ 129-144).  Additionally, nothing in the Amended Complaint provides whether or how any of the Defendants played an active and substantial role in causing ATI to lose the benefits of the

Agreement or that any of the Defendants induced the breach. *Id.* Indeed, ATI has not even pled that NEXTracker or Flex ever requested or used any ATI confidential information. *Id.*

Finally, as discussed above, ATI has not pled any specific damages that were a result of any breach of the Agreement. Accordingly, ATI's tortious interference claim must be dismissed because ATI has not pled the causation, damages, or knowledge elements required for the claim.

### E.  ATI's Claim of Conversion (Count VII) is Preempted by ATI's Trade Secret Misappropriation Claims

ATI's conversion claim is based on the same facts as its claims of misappropriation of trade secrets (Counts I and II), and is thus preempted under New Mexico's Uniform Trade Secrets Act. ATI's misappropriation of trade secret claims and conversion claim are coextensive, based entirely on the same conduct and allegations of misappropriation. ATI's Amended Complaint alleges that Defendants "intentionally exercised dominion over ATI's trade secrets and confidential information, including, but not limited to, ATI's bidding preparation and contract procurement information." (D.I. 52 at ¶ 147). It goes on to plead identical allegations as those set forth in its misappropriation of trade secrets claim without identifying any document that was allegedly converted but not also misappropriated as a trade secret. (D.I. 52 at ¶¶ 145-152).

"[T]he Uniform Trade Secrets Act bars common law claims . . . that are based entirely on factual allegations of misappropriation of trade secrets." *Gaedeke Holdings VII Ltd v. Baker*, 683 F. App'x. 677, 680 (10th Cir. 2017) (referencing district court decision making common law claims unavailable). Many district courts have held that conversion claims based solely on the misappropriation of information are preempted by the Uniform Trade Secrets Act. *See, e.g.*, *QSRSoft, Inc. v. Restaurant Technology, Inc.*, No. 06-C-2734, 2006 WL 3196928, at *10 (N.D.

Ill. Nov. 2, 2006) (the Illinois  Uniform Trade Secrets Act preempts a claim for conversion of

trade secrets); *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 751 (2d

Cir. 1998) ("The district court correctly found that the [California UTSA] preempts any tort

remedy for misuse of trade secrets."); *Unisource Worldwide, Inc. v. Swope*, 964 F. Supp.2d.

1050, 1056 (D. Ariz. 2013) ("the AUTSA preempts torts based on misappropriation of

information").  A state's uniform trade secrets act is intended to "totally supersede and replace

the common law dealing with the subject matter." *K.C. Multimedia, Inc. v. Bank of Am. Tech. &*

*Operations, Inc.*, 171 Cal. App. 4th 939, 953 (2009).  Put another way, a state's uniform trade

secret act supersedes claims "based on the same nucleus of facts as [a] misappropriation of trade

secrets claim for relief." *Id.* at 955 (internal citations omitted).

　　　Two main policy rationales underlie this approach.  First, if a uniform trade secrets act

did not supersede these claims, then misappropriation of non-trade secrets would justify a

broader range of civil remedies than misappropriation of trade secrets; such a result is illogical,

since non-trade secrets seem to be both less valuable and subject to fewer protective measures

than trade secrets.  *See SunPower Corp. v. SolarCity Corp.*, No. 12–cv–00694, 2012 WL

6160472, at *5 (N.D.Cal. Dec.11, 2012) ("To [not recognize the full extent of preemption] would

allow plaintiffs to avoid the preclusive effect of [California UTSA] (and thereby plead

potentially more favorable common-law claims) by simply failing to allege one of the elements

necessary for information to qualify as a trade secret.").  The second rationale rests on the

premise that the law must recognize some property interest in information before its

misappropriation may be deemed unlawful.  *See, e.g., Silvaco Data Systems v. Intel Corp.*, 184

Cal.App. 4th 210, 239 n. 22 (Cal. Ct. App. 2010) ("Information that does not fit this definition

[of "trade secret," under California UTSA], and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen.").

Here, ATI's conversion claim against the Defendants is based on the identical conduct and nucleus of facts as its trade secret claim; no different conduct or facts are alleged.  ATI's entire claim is pled with eight generic paragraphs that fail to identify any unique document that would not be covered by ATI's trade secret misappropriation claim.  Given that a conversion claim cannot proceed on such facts, ATI's conversion claim should be dismissed with prejudice for failure to state a claim.

**F.  ATI Fails to Adequately Plead Any Benefit to NEXTracker Required for a Claim of Unjust Enrichment/Restitution, Which is Preempted by ATI's Other Claims (Count VIII)**

ATI claims that the Defendants have been "enriched and have benefitted from their use of ATI's valuable trade secrets," but has failed to identify any actual "benefit" that NEXTracker has gained as a result of any conduct alleged in ATI's Amended Complaint.  This is another manifestation of ATI's utter inability to plead damage of any kind.  A claim for unjust enrichment requires a showing that: (1) another has been ***knowingly benefitted*** at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust.  *See Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000).  But as discussed previously, the Amended Complaint fails to allege any facts showing that Defendants have benefitted in any way by the conduct ATI alleges they undertook.

In any event, "New Mexico law strongly disfavors unjust enrichment claims when remedies exist under contract law" and such claims have been dismissed when the plaintiff has – as here – pled a separate breach of contract claim.  *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. CV 15-00218, 2015 WL 12803775, at *4 (D.N.M. June 25, 2015)

("Steadfast has not pleaded that anything is preventing it from pursuing a contract remedy against Legacy for recovery of the allegedly unpaid premiums – indeed, Steadfast brings just such a claim in Count I.  Simply put, in the absence of any allegations to the contrary, Steadfast has a complete and adequate remedy at law – a contract claim against Legacy.  Under these circumstances, its unjust enrichment claim against Chesapeake must fail."); *see also Gaedeke Holdings VII*, 683 F. App'x. at 680 ("where a plaintiff has an adequate remedy at law, a court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment.") (referencing district court); *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, 249 F.App'x, 66 (10th Cir. 2007) (unjust enrichment claim dismissed because damages for unjust enrichment were duplicative of the damages sought for misappropriation of trade secrets.").

Given that ATI has separately alleged breach of contract based on the same set of facts and seeks the same remedies with its misappropriation of trade secret claims, ATI's unjust enrichment claim must be dismissed with prejudice as entirely duplicative of ATI's other claims. *See Lindsay*, 275 Fed. Appx. at 747 (upholding grant of dismissal with prejudice where Plaintiff had wholly failed to state actionable claims).

### G.  ATI Fails to Plead with Particularity, and to Adequately Plead Any Misrepresentation for a Claim of Fraud and Constructive Fraud (Count IX)

In alleging fraud, ATI must "state with particularity the circumstances constituting fraud or mistake."  *See* Fed. R. Civ. P. 9(b); *Skyline Potato Co. v. Tan-O-On Mktg., Inc.*, 879 F. Supp. 2d 1228, 1247 (D.N.M. 2012).  "The elements of fraud include (1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation."  *Williams v. Stewart*, 112 P.3d 281, 290 (N.M. Ct. App. 2005).  And "[a]n action for constructive fraud is maintainable

17

where there is a nondisclosure of material facts and the person charged with the constructive fraud had a ***duty to speak*** under existing circumstances." *Wagner Equip. Co. v. Wood*, No. CV 11-466, 2012 WL 12863314, at *2 (D.N.M. July 2, 2012) quoting *Barber's Super Markets, Inc. v. Strykder*, 500 P.2d 1304, 1309 (N.M. Ct. App. 1972) (emphasis added).

ATI's allegations of fraud and constructive fraud should be dismissed because ATI has failed to plead fraud with particularity, and has also failed to plead sufficient facts to show that any misrepresentation occurred on which it detrimentally relied. As an initial and dispositive matter, the Amended Complaint does not allege that Defendants NEXTracker, Garcia, Shugar, Graybeal, or Flex made any false statements, omissions or misrepresentations of fact whatsoever. Instead, ATI attributes all of the alleged misrepresentations exclusively to Mitchell. (*See* D.I. 52 at ¶¶ 161-165). The Amended Complaint does not sufficiently plead why any of the remaining Defendants had a duty to ATI and what that duty was (or could possibly be). Indeed, the Amended Complaint does not specify who Garcia, Shugar and Graybeal are, why they had a duty to inform ATI regarding Mitchell's conduct, and how ATI detrimentally relied on their alleged misrepresentations.

Similarly, the Amended Complaint does not sufficiently plead misrepresentations by Mitchell. Mitchell had no duty to inform ATI regarding the alleged downloading of files that occurred during his employment with ATI, his acceptance of NEXTracker's offer of employment, or his subsequent employment with Flex or NEXTracker. Indeed, "[a]n employee may lawfully seek other employment or even make arrangements to compete with his employer . . . " *MEI Techs.*, 2009 WL 10665560, at *2 (D.N.M. July 6, 2009). ATI seeks to impose a duty on Mitchell that simply does not exist as a matter of law. Thus, ATI's fraud and

constructive fraud claims must be dismissed with prejudice.  *Brereton*, 434 F.3d. at 1219 (10th

Cir. 2006) (granting dismissal with prejudice where leave to amend would be futile).

### H.  ATI Fails to Adequately Plead the Facts Required for a Claim Under the New Mexico Unfair Practices Act (Count X)

ATI's Amended Complaint states that Mitchell's failure to disclose his new job with

NEXTracker gives rise to an Unfair Practices Act ("UPA") claim.  However, this entirely misses

the point of the UPA, which is to create a cause of action for misleading statements made in

connection with the sale of goods or services.  "The gravamen of an unfair trade practice is a

misleading, false, or deceptive statement made knowingly ***in connection with the sale of goods***

***or services***."  *Diversey Corp. v. Chem–Source Corp.*, 965 P.2d 332, 338 (N.M. Ct. App. 1998)

(emphasis added).  To state a claim under the UPA, "a complaint must contain allegations to the

effect that: (1) the defendant made an oral or written statement, a visual description or a

representation of any kind that was either false or misleading; (2) the false or misleading

representation was knowingly made in connection with the sale, lease, rental, or loan of goods or

services in the regular course of the Defendant's business; and (3) the representation was of the

type that may, tends to, or does deceive or mislead any person."  *Lohman v. Daimler-Chrysler*

*Corp.*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007).

ATI has not alleged that Mitchell was trying to sell goods or services to ATI as part of his

alleged failure to disclose his new employment.  *See Diversey Corp.*, 965 P.2d at 338.  ATI

points only to Mitchell's alleged statement, to ATI's CEO at a trade convention when Mitchell

allegedly stopped by his former employer's booth, that he was employed by Flex rather than

NEXTracker; even accepting that fact as true, there is no allegation in the Amended Complaint

that his statement to ATI's CEO was made in connection with the sale of goods or services to

anyone.  And Mitchell simply had no duty to disclose to ATI that he had accepted a job offer with a competitor prior to tendering his resignation.

Additionally, ATI fails to sufficiently allege a claim under the UPA against Defendants Garcia, Shugar, Graybeal, Flex, and NEXTracker because the Amended Complaint contains no allegations that they made any false or misleading statements, or that any such statements were made in connection with the sale of goods or services.  Accordingly, ATI's UPA claim should be dismissed with prejudice for failure to state a claim.

## IV.   CONCLUSION

For the aforementioned reasons, the court should dismiss Counts III-X of the Amended Complaint without leave to amend.

Dated:  October 16, 2017                    Respectfully submitted,


By:  */s/ Matthew E. Jackson*
     Robert E. Hanson
     Matthew E. Jackson
PEIFER, HANSON & MULLINS, P.A.
P.O. Box 25245
Albuquerque, NM 87125-5245
Tel:     (505) 247-4800
Fax:     (505) 243-6458
Email: rhanson@peiferlaw.com
     mjackson@peiferlaw.com

*Counsel for Defendants*

*-and-*

FISH & RICHARDSON PC
Frank Scherkenbach (*admitted pro hac vice*)
One Marina Park Dr.
Boston, MA 02210-1878
Tel:     (617) 521-7883
Fax:     (617) 542-8906
Email: scherkenbach@fr.com

20

Betty Chen (*admitted pro hac vice*)
500 Arguello St., Ste. 500
Redwood City, CA 94063
Tel:     (650) 839-5070
Fax:     (650) 839-5071
Email:  bchen@fr.com

*Counsel for Defendants NEXTracker, Inc.,*
*Daniel S. Shugar, Marco Garcia, Flextronics*
*International USA, Inc., and Scott Graybeal*

*-and-*

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP
Andrew G. Fiorella (admitted *pro hac vice*)
200 Public Sq., Ste.2300
Cleveland, OH 44114
Tel:     (216) 363-4500
Fax:     (216) 363-4588
Email:  afiorella@beneschlaw.com

Nicholas J. Secco (admitted *pro hac vice*)
Trevor J. Illes (admitted *pro hac vice*)
333 West Wacker Dr., Ste. 1900
Chicago, IL 60606
Tel:     (312) 212-4949
Fax:     (312) 767-9192
Email:  NSecco@beneschlaw.com
          TIlles@beneschlaw.com

*Counsel for Defendants NEXTracker, Inc.,*
*Flextronics International USA, Inc., Scott Graybeal,*
*and Colin Mitchell*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 16, 2017, the foregoing Defendants'

Notice and Motion to Dismiss Plaintiff Array Technologies, Inc.'s Motion and Motion to

Dismiss Plaintiff Array Technologies, Inc.'s Complaint was served by electronic mail upon the

below listed counsel of record:

| | |
|---|---|
| David F. Cunningham<br>Daniel H. April<br>THOMPSON, HICKEY, CUNNINGHAM,<br>  CLOW, APRIL & DOLAN, P.A.<br>460 St. Michael's Dr., Ste. 1000<br>Santa Fe, NM 87505<br>Tel:  (505) 988-2900<br>Fax:  (505) 988-2901<br>Email: dfc@catchlaw.com<br>        dan_april@catchlaw.com | Attorneys for Plaintiff<br>ARRAY TECHNOLOGIES,<br>INC. |
| Kurt Wihl<br>Nathan S. Stimson<br>William Spencer Reid<br>KELEHER & MCLEOD<br>PO Drawer AA<br>Albuquerque, NM 87103<br>Tel:  (505) 346-4646<br>Fax:  (505) 346-1370<br>Email: sr@keleher-law.com<br>        nss@keleher-law.com<br>        sr@keleher-law.com | Attorneys for Plaintiff<br>ARRAY TECHNOLOGIES,<br>INC. |

PEIFER, HANSON & MULLINS, P.A.


By: *Matthew E. Jackson*
        Matthew E. Jackson

1