IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARRAY TECHNOLOGIES, INC.,

        Plaintiff,

vs.                                                     Civ. No. 17-087 JCH/LF

COLIN MITCHELL, and individual,
NEXTRACKER, a Delaware corporation,
MARCO GARCIA, an individual,
DANIEL SHUGAR, an individual,
SCOTT GRAYBEAL, an individual,
FLEXTRONICS INTERANTIONAL U.S.A., INC.,
a California corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion to Exclude Testimony of Clarke B. Nelson (ECF No. 472). The Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully advised, concludes that a hearing is not necessary to resolve the issues in this motion and that the motion should be granted in part and denied in part as described herein.[1]

**I.     STANDARD**

---

[1] Defendants have moved to exclude certain opinions by Clarke B. Nelson ("Nelson") from his supplemental report. *See* Defs.' Motion to Exclude Unauthorized Supplemental Expert Reports of Clarke B. Nelson and Robert E. Parkins (ECF No. 430). The Honorable Laura Fashing resolved some of the issues in that motion but left for this Court to decide the admissibility of evidence in the supplemental reports. *See* Order on Motion 2, 8 (ECF No. 522). The Court will resolve the issues of admissibility regarding Nelson's supplemental report in a separate Memorandum Opinion and Order.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion so long as the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. *See* Fed. R. Evid. 702, 2000 Amendments. "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. Where an expert witness's testimony is based on his experience, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009) (quoting Fed. R.

Evid. 702 advisory committee's note (2000)).

The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *See id.* at 1241, 1251. Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997). Having reviewed the motion, briefs, evidence presented, and applicable law, the Court determines the evidence in the record is sufficient to enable the Court to perform its gatekeeping duty without a hearing in resolving the motion before it.

## II.     FACTUAL BACKGROUND

This case involves two competitors in the solar tracking equipment industry, Plaintiff Array Technologies, Inc. ("Array" or "ATI") and Defendant NEXTracker ("NEXTracker" or "NX"), a wholly-owned subsidiary of Flex, Ltd. ("Flex"). *See* Am. Compl. ¶¶ 16, 33. This dispute arose when Array's Business Development Manager, Defendant Colin Mitchell ("Mitchell"), left Array's employment and allegedly began working for NEXTracker and Flex. *See id.* at ¶¶ 27, 41-46. According to Array, Mitchell unlawfully disclosed Array's trade secret and confidential information to NEXTracker, resulting in Array's loss of solar tracker projects to NEXTracker. *See id.* at ¶¶ 74-99, 155-57.

Array asserts the following claims against all Defendants: misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* (Count One); misappropriation of trade secrets under the New Mexico Uniform Trade Secrets Act, N.M. Stat.

3

Ann. § 57-3A-1, et seq. (Count Two); breach of fiduciary duty (Count Five); conversion (Count Seven); and fraud and constructive fraud (Count Nine). Array also asserts breach of contract (Count Three) and breach of the covenant of good faith and fair dealing (Count Four) against Defendant Mitchell.[2] Array additionally alleges that Defendants NEXTracker, Marco Garcia, Daniel S. Shugar, and Flex committed tortious interference with contract (Count Six). Following this Court's entry of a Memorandum Opinion and Order dismissing certain claims, Array has claims against Defendants NEXTracker, Garcia, Shugar, Graybeal, and Flex for unjust enrichment/restitution (Count Eight).

Array hired Robert E. Parkins ("Parkins") to provide an opinion on whether Defendants' alleged misconduct was a contributing factor to Array's project losses and NEXTracker's project wins. Parkins' Report 1, ECF No. 439-3. Parkins examined 79 projects on which Array and NEXTracker were competing when Mitchell left Array. *See id.* at 50-52. Based on his industry experience and review of the evidence in this case, Parkins concluded that "Defendants' conduct was a significant factor contributing to NX winning projects against ATI" on at least 23 of the projects. *Id.* at 52-53. Parkins also opined:

> Based on Defendants' conduct and the information that they obtained about ATI as well as Mr. Mitchell's assistance in helping NX compete with ATI to win projects, and based on the evidence demonstrating that Defendants utilized Mr. Mitchell to help NX win the projects identified above, I believe that it is also reasonable to infer that Mr. Mitchell's work for the benefit of NX and/or the information about ATI that he disclosed to NX contributed to assist NX in winning the following jobs against ATI.

*Id.* at 93. Parkins then listed 48 projects, 23 of which he had previously determined that Defendants' alleged misconduct was a significant factor to NX winning them. *See id.* at 93-94.

---

[2] The Honorable James A. Parker previously dismissed Array's unjust enrichment/restitution claim against Defendant Mitchell and Array's New Mexico Unfair Practices Act claim against all Defendants. *See* Mem. Op. and Order 32, ECF No. 90.

4

In addition to Parkins, Array retained Nelson to evaluate its damages claims. *See* Nelson Report 4, ECF No. 472-1. Nelson is a Certified Public Accountant ("CPA") and a Chartered Global Management Accountant, and he is Accredited in Business Valuation and Certified in Financial Forensics. *Id.* at 4-5. Nelson has not worked in the solar power industry or solar tracking industry. *See* Nelson Dep. 11:17-23, ECF No. 472-2.

Nelson is not offering any opinions on liability. *Id.* at 206:6-8. Array asked him to assume that its damages may be measured by its own lost profits or by disgorgement of Defendants' profits, and he relied on the significant factor and contributing factor projects Parkins identified in his report. Nelson Report 87, ECF No. 472-1. Nelson assumed liability for the projects Parkins identified; he has no opinions as to whether any particular project(s) should be included. Nelson Dep. 32:2-22, 93:5-9, ECF No. 472-2. Nelson calculates damages for the 48 projects. *Id*. at 32:20-22.

## III. ANALYSIS

Defendants move to exclude Sections III.J, IV, V, and VI.A.1 of Nelson's expert report. They argue that Nelson is not qualified to opine on the merits of Array's claims or on its manufacturing capacity.

### 1. Section III.J - Nature of Dispute and Section IV - Mr. Mitchell's Alleged Breach of the Mitchell 2013 Agreement

Defendants assert that in sections III.J and IV Nelson improperly makes observations on issues of liability for which he has no expertise. Array contends that it is proper under Rule 26 for an expert to disclose the facts upon which he relied in his report and that the facts helped him determine the appropriate form of damages caused by Defendants' alleged misconduct. Although many of the 93 pages in his report contain background discussion of the case, Array notes that

Defendants have not objected to Nelson's 120 pages of schedules that include his calculations, which are attached to his report.

The Court agrees with Array that the facts set forth in the background section of Nelson's report are permissible under Rule 26 to inform the opposing party upon what the expert bases his opinions. Nonetheless, it is another matter entirely as to whether Nelson is permitted to testify to those facts before a jury. Because Nelson's opinions are limited to damages and he has assumed liability for purposes of his opinions, Nelson will not be permitted to testify to background facts that are relevant only to liability. *Cf. Rowe v. DPI Specialty Foods, Inc.*, 727 F. App'x 488, 501 (10th Cir. Mar. 7, 2018) (unpublished opinion) (affirming district court's exclusion of expert's opinions on weight to give facts and expert's attempt to take a principal role in sifting, weighing, and reciting facts for jury).

Based on the Court's review of Nelson's report, Nelson should not be allowed to testify to the background information in the following sections, because he has no personal knowledge of the facts therein and he does not explain how they are relevant to his damages assessment when he assumed liability: III.J (describing nature of dispute based on allegations in amended complaint), IV.A (primarily an excerpt from Parkins' report), IV.B.1 (discussing evidence that NX believed acquiring Mitchell would help it "crush" and "cripple" ATI), IV.B.2 (describing evidence that Mitchell promoted himself as accounting for 95% or more of Array's 2015-16 business), IV.B.3 (setting out emails and deposition testimony showing NX expressed urgency in recruiting Mitchell because of several large deals), IV.B.5 (setting out June 21, 2016 email from Dan Shugar regarding anticipated financial benefit to NX in hiring Mitchell), IV.B.6 (setting out emails and documents indicating Mitchell worked with or assisted various NX individuals in sales), IV.B.7 (setting out evidence suggesting Mitchell provided information and "intel" to NX personnel,

including after entry of Consent Order), IV.B.8 (describing emails indicating Defendants intended to keep Mitchell's NX involvement hidden). *See* Nelson Report 47-64, ECF No. 472-1.

To the extent, however, that certain background facts are necessary to explain his damages calculations, the Court may allow such testimony. For example, Nelson may testify that he examined Parkins' report, the amended complaint, and emails between NEXTracker executives with or regarding Mitchell to explain his efforts to gain knowledge of the facts of the case without setting forth the details therein. Moreover, he is permitted to testify that he examined certain general categories of evidence to make sure there was a nexus between his calculations and the various causes of action. *See* Nelson Dep. 207:20-23, ECF No. 207. He should not, however, discuss the specific evidence regarding liability to explain his damages opinions.

### 2. Section V - Misappropriation of Trade Secrets

In Section V, Nelson sets forth Parkins' discussion in his report of three categories of Array's asserted trade secrets and the importance of the alleged trade secrets. *See* Nelson Report 65-68, ECF No. 472-1. Nelson then discusses the email and deposition evidence regarding Mitchell's alleged disclosures of trade secret information, the ways in which NEXTracker used the information, the importance of that information to Array, and Array's efforts to protect its confidential information with non-disclosure agreements. *See id.* at 69-86.

Like the information in Section IV, Nelson has no personal knowledge of the background information in Section V, and he does not have qualifications in the solar industry to opine on what is a trade secret or the importance of alleged trade secrets in that industry. *See* Nelson Dep. 19:16-20:24, 223:19-224:7, ECF No. 472-2 (stating that he was not providing opinions on what is a trade secret, on importance of alleged trade secrets, or on whether Defendants violated DTSA, because they are industry-specific questions). Because he has assumed liability, he does not need to explain

7

the specifics of the background information on liability to show the jury how he reached his opinions on damages. *See id.* 31:9-32:22 (stating he created damages calculations for 48 projects provided in Parkins Report); 82:22-83:22 (explaining that background information in his report is part of context he relied upon, but that the information does not change any of the calculations he made). The Court will therefore not permit Nelson to testify to the specifics of the background information in Section V, although he may testify to the general assumptions that he made to the extent they are relevant to his calculations on damages. *See Wells v. Allergan, Inc.*, No. CIV-12-973-C, 2013 WL 7208221, at *2 (W.D. Okla. Feb. 4, 2013) ("An expert must do more than simply constructing a factual narrative based upon record evidence or 'address[ ] 'lay matters which a jury is capable of understanding and deciding without the expert's help.'") (Internal quotations and citation omitted).

### 3. Section VI.A.1 - Indicia of ATI's Capacity to Capture Incremental Sales

Turning to Section VI.A.1 of Nelson's Report, he relied on Array's historical shipment data from December 2016 through December 2018 that ranged between 9 and 369 MW per month and compared that information to the tracker deliveries/shipments for the projects identified by Parkins. *See* Nelson Report 89, ECF No. 472-1. Nelson explained that the 48 projects "result in potential incremental tracker deliveries/shipments of between 0 and 379 MW per month and total potential required capacity of between 53 and 560 MW per month during this period…." *Id.* at 90. Nelson acknowledged that the increase in certain months could involve doubling production, but not always or consistently across the months. Nelson Dep. 191:5-21, ECF No. 472-2. Nelson also examined Array's quarterly capacity analysis, noting that it reached 1,659 MW in Q1 2016, equating to an average monthly capacity of 553 MW. Nelson Report 90, ECF No. 472-1.

Nelson additionally relied on conversations with Bob Bellemare ("Bellemare"), Array's chief operating officer, to conclude that Array had the ability to expand its operations by running additional manufacturing shifts without incurring any material capital expenditures to do so. *Id*. In his conversations with Bellemare, Nelson learned that additional incremental costs in doubling capacity would be captured in the costs of goods sold, so there would not be an additional capital expenditure, for example, to run the additional shift. Nelson Dep. 193:17-194:3, ECF No. 472-2. Additional labor, additional materials, and additional overhead would be captured in the cost of goods sold. *Id.* Accordingly, Nelson opined, "Based on ATI's historical shipments, capacity, and capability to meet periodic increases in demand, it appears ATI had the capacity to realize the projects identified by Mr. Parkins." Nelson Report 90, ECF No. 472-1.

Defendants argue that Nelson, as an accountant, is not qualified to opine on Array's manufacturing capacity, in particular that Array was capable of fulfilling all 48 projects identified by Parkins. Defendants contend that Bellemare's statements are Nelson's only bases for the following opinions: (1) Array could expand its manufacturing capacity to supply all of the projects at issue, and (2) Array would not require any additional material capital expenditures nor additional incremental costs. Defendants assert that Nelson should not be able to make opinions based on statements of a witness Defendants were unable to depose and cross examine.

Array replies that Rule 703 permits Nelson to rely on his conversations with company executives to determine facts about the company. Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert *has been made aware of* or personally observed. *If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted*.

Fed. R. Evid. 703 (italics added).

As an accountant, Nelson was not qualified by knowledge and experience regarding the company's ability to expand operations by running additional shifts without incurring additional capital expenditures. For this reason, it would be typical and reasonable in the field of accounting to rely on a company's employees to provide the accountant with that information. Consequently, those facts and data need not be admissible for Nelson's opinions to be admissible under Rule 703.

Defendants, however, object to Nelson's reliance on Bellemare because Array did not disclose him as an individual likely to have discoverable information. *See* Pl.'s Initial Disclosures, ECF No. 474-1. On March 8, 2019, Array subsequently disclosed Bellemare as an individual likely with discoverable information, including information about "ATI's financials, sales, and capacity," in its First Amended Initial Disclosures (ECF No. 474-2 at 4 of 5). Defendants then requested that counsel for Array provide a date for Bellemare's deposition or confirm that it would not be relying upon his testimony, including trial testimony, declaration, or other discussions that may be relied upon by their experts. Mar. 14, 2019 email, ECF No. 474-3. Instead, on March 28, 2019, Array provided its Second Amended Initial Disclosures (ECF No. 474-4) in which it no longer listed Bellemare. Consequently, Defendants never deposed him. *See* Defs.' Mot. 10, ECF No. 472. Defendants argue that Nelson's only source for his opinion that Array can nearly double its production capacity without incurring additional incremental cost is Bellemare, but Array should not be allowed to backdoor in the information from Bellemare because of its discovery violations.

Array argues that under Rule 26(e) it had no obligation to supplement its disclosures because Bellemare had been disclosed in depositions of other Array employees. *See* Fed. R. Civ. P. 26(e), Advisory Committee Notes, 1993 Amendments ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties

in writing or during the discovery process…."). For example, Ron Corio, Array's founder and former CEO, disclosed in his deposition that he spoke to Bellemare, among others, in preparation for his deposition. Corio Dep. 8:11-11:11, ECF No. 485-4. Defendants were aware that Bellemare may have information pertinent to the case, given that they listed Bellemare in their Amended Initial Disclosures (ECF No. 485-5), submitted on October 26, 2018.

Nevertheless, the problem with Array's argument is that Defendants took multiple steps to set up a deposition of Bellemare, and in response, Array removed him from its second amended initial disclosures. It was reasonable therefore for Defendants to believe that Array was not going to use Bellemare to support any of its claims and thus to cease further attempts to depose him. The Court finds that Array should not be permitted to rely on Nelson's opinion that is based on Bellemare's statements without the opportunity to depose him. The sanction of striking Nelson's opinion at this point, however, seems too harsh. Instead, if Array wishes Nelson to testify to Array's ability to expand its manufacturing operations without incurring additional material capital expenditures, Array must produce Bellemare for a deposition, at Array's expense, **within 60 days** of entry of this Memorandum Opinion and Order. Failure to do so may result in striking Nelson's opinions that are based solely on information provided by Bellemare.[3]

**IT IS THEREFORE ORDERED** that Defendants' Motion to Exclude Testimony of Clarke B. Nelson (ECF No. 472) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Defendants' request to exclude Clarke B. Nelson from testifying regarding facts related to liability set forth in Sections III.J, IV, and V is **GRANTED** to the extent described herein.

---

[3] The parties should make efforts to meet this 60-day deadline. Given the uncertainty surrounding how long the various States' stay-at-home orders related to the coronavirus may last, should the parties need additional time to arrange for the deposition of Bellemare, they should file a motion with the Court.

2. Defendants' request to exclude Clarke B. Nelson from testifying to the opinions set forth in IV.A.1 is **DENIED** at this time.

3. Plaintiff must produce Bob Bellemare for a deposition, at Plaintiff's expense, **within 60 days** of entry of this Memorandum Opinion and Order. Failure to do so may result in striking Mr. Nelson's opinions that are based solely on information provided by Mr. Bellemare.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**