IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ARRAY TECHNOLOGIES, INC.,**

        **Plaintiff,**

    vs.                                              Civ. No.  17-087 JCH/LF

**COLIN MITCHELL, and individual,**
**NEXTRACKER, a Delaware corporation,**
**MARCO GARCIA, an individual,**
**DANIEL SHUGAR, an individual,**
**SCOTT GRAYBEAL, an individual,**
**FLEXTRONICS INTERNATIONAL U.S.A., INC.,**
**a California corporation,**

        **Defendants.**

## MEMORANDUM OPINION AND ORDER

On August 30, 2019, Plaintiff Array Technologies, Inc. ("Array" or "ATI") filed a Motion for Summary Judgment Dismissing Defendants' Unclean Hands Defense (ECF No. 479). Defendants Colin Mitchell, NEXTracker, Inc. ("NEXTracker" or "NX"), Marco Garcia, Daniel Shugar, Scott Graybeal, and Flextronics International U.S.A., Inc., ("Flex"), collectively "Defendants," oppose the motion. The Court, having considered the motion, briefs, evidence, applicable law, and otherwise being fully advised, concludes that the motion should be granted.

    **I.**        **INTRODUCTION OF CLAIMS AND THE UNCLEAN HANDS DEFENSE[1]**

This case involves two competitors in the solar tracking equipment industry, Array and NEXTracker, a wholly-owned subsidiary of Flex. *See* Am. Compl. ¶¶ 16, 33. This dispute arose

---

[1] This section sets forth the allegations supporting Array's claims and Defendants' unclean hands defense. It is provided for context only to better understand the facts upon which the Court relies in its Factual Background section.

when Array's Business Development Manager, Colin Mitchell ("Mitchell"), left Array's employment and allegedly began working for NEXTracker and Flex. *See id.* at ¶¶ 27, 41-46. According to Array, Mitchell unlawfully disclosed Array's trade secrets and confidential information to NEXTracker, resulting in Array's loss of solar tracker projects to NEXTracker. *See id.* at ¶¶ 74-99, 155-57. Array alleges that the following constitutes valuable trade secrets: its marketing and business plans as well as details of its bid preparation and contract procurement process, including the details of the operations and maintenance ("O&M") costs for Array's solar tracking equipment, and its "distribution methods, pricing, consumer profiles, advertising strategies, customer lists, manufacturing processes, and engineering studies." *Id.* at ¶ 72. More specifically, according to Array's expert, Robert E. Parkins, Array asserts as trade secrets: (1) Array's sales strategy, pitch, and NPV tool[2]; (2) Array's benchmark pricing, costs, and margins; and (3) Array's customer and project pipeline information. *See* Parkins Report 1, ECF No. ECF No. 439-3. Array alleges that Mitchell disclosed its trade secrets to Defendants in October and November 2016. *See* Pl.'s Reply 6, ECF No. 501.

Array asserts the following claims against all Defendants: misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 (Count One); misappropriation of trade secrets under the New Mexico Uniform Trade Secrets Act, N.M. Stat. Ann. § 57-3A-1, *et seq.* (Count Two); breach of fiduciary duty (Count Five); conversion (Count Seven); and fraud and constructive fraud (Count Nine). Array also has claims for breach of contract (Count Three) and breach of the covenant of good faith and fair dealing (Count Four) against Defendant Mitchell.[3]

---

[2] Array describes its NPV tool, or its Net Present Value tool, as a spreadsheet that allows customers to compare the cost over the life of the project of different tracking architectures using O&M costs and installation costs, among other factors. *See* Parkins Report 1, 20, ECF No. 439-3.

[3] The Honorable James A. Parker previously dismissed Array's unjust enrichment/restitution claim against Defendant Mitchell and Array's New Mexico Unfair Practices Act claim (Count Ten) against all Defendants. *See* Mem. Op. and Order 32, ECF No. 90.

Array additionally alleges that Defendants NEXTracker, Garcia, Shugar, and Flex committed tortious interference with contract (Count Six). Finally, Array has a cause of action against Defendants NEXTracker, Garcia, Shugar, Graybeal, and Flex for unjust enrichment/restitution (Count Eight).

Defendants assert an unclean hands defense as its third affirmative defense: "ATI's recovery is barred by its own improper conduct or 'unclean hands,' including ATI's treatment of Mr. Mitchell and ATI's misuse of NEXTracker information, and other conduct that caused or contributed to the damages ATI alleges." Defs.' Answer ¶ 187, ECF No. 96. In its supplemental responses to interrogatories, NEXTracker elaborated on its unclean hands defense, asserting among other things that Array's own attempts to acquire and use NEXTracker's information and its possession of NEXTracker's quotes and bids to customers and potential customers barred Array's claims. *See* Def. NEXTracker's Supp. Resp. to Interrog., ECF No. 479-1 at 2-3 of 5.

Array filed a motion for summary judgment on the grounds that Defendants' unclean hands defense does not bar its recovery because Defendants have not shown inequitable conduct by Array that is related to its causes of action. Defendants respond that Array's claims are based on alleged misappropriation by NEXTracker of its sales strategy and NPV tool regarding comparative O&M costs, but that Array improperly obtained NEXTracker information and used it as a source of the comparative costs in its NPV tool and sales strategy. Defendants argue that the record in their favor shows that Array improperly obtained NEXTracker information from customers, including information marked "confidential," and used that information in its spreadsheet tool. Because Array disputes the facts supporting their defense, Defendants contend the Court cannot award summary judgment on this issue.

## II.     STANDARD

Defendants bear the burden of proof at trial on their affirmative defense. *See Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007) (noting that the common law presumes that the burden of proof for an affirmative defense rests with the defendant, as generally the burdens of proof and persuasion with regard to any given issue are allocated to the same party). On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). *See also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) ("If the movant, however, does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense."). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial as to elements essential to the non-moving party's case or affirmative defense. *See Shapolia*, 992 F.2d at 1036; *Deutsche Bank National Trust Co. v. Martinez*, Civ. No. 14-625 JCH/KK, 2016 WL 6304461, at *4 (D.N.M. Jan. 27, 2016) (unpublished) (and cases cited therein). The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Accordingly, the Court will construe evidentiarily supported facts and reasonable inferences in favor of Defendants, the non-moving party.

### III. FACTUAL BACKGROUND

In May 2013, Array hired Colin Mitchell as its Business Development Manager. *Compare* Am. Compl. ¶ 27, ECF No. 52, *with* Answer ¶ 27, ECF No. 96. Mitchell resigned from Array on July 8, 2016. *Compare* Am. Compl. ¶ 41, *with* nAnswer ¶ 41, ECF No. 96.

Array created a preventative maintenance cost sheet that focused on O&M costs and included, for example, information about NEXTracker's battery component. *See* Ward Dep. 33:9-34:4, ECF No. 489-3. Customers provided Array with NEXTracker information that was ultimately incorporated into the O&M cost spreadsheet. *Id.* at 34:5-8.

In the solar tracking industry, sharing of O&M cost information by customers was common. *Id.* at 65:13-22. Information put out by Array and NEXTracker may be shared in the industry regardless of whether there was a non-disclosure agreement ("NDA") in place. *See* Orshan Dep. 227:4-15, ECF No. 489-8. Michael Orshan, Array's former Director of Sales, estimated roughly 30% of the information put out by Array and NEXTracker was shared in the industry. *See id.*; Defs.' Ex. A, ECF No. 489-1 (listing Orshan's title). Array's management, including Array's founder and Chief Executive Officer, Ron Corio, encouraged gaining competitive intelligence, including O&M costs and other pricing information about NEXTracker. Ward Dep. 131:17-25, ECF No. 489-3; Joint Status Report 6, ECF No. 37 (listing Corio's title).

Between April 2014 and February 2015, Array was in possession of NEXTracker documents after having been given access to a third-party customer's document repository. *Compare* Defs.' Resp. ¶ B, ECF No. 489, *with* Pl.'s Reply ¶ b, ECF No. 501. *See also* Defs.' Ex. E, ECF No. 489-5. Among the documents in Array's possession were a NEXTracker engineering drawing marked "CONTAINS PROPRIETARY INFORMATION," a NEXTracker O&M Manual marked "Confidential for NEXTracker Customers," and a NEXTracker Installation Manual

marked "Confidential for NEXTracker Customers." Defs.' Ex. E, ECF No. 489-5. As of September 2015, Array came into possession of additional NEXTracker information, including NEXTracker quotes with price information, warranty information, and terms and conditions of sale. *Compare* Defs.' Resp. ¶ C, ECF No. 489, *with* Pl.'s reply ¶ c, ECF No. 501. *See also* Defs.' Ex. D, ECF No. 489-4.

On December 14, 2015, Corio asked Orshan by email to send the O&M spreadsheet to another customer and request feedback from the customer because he would "like to get next tr cost numbers put into the spreadsheet." Defs.' Ex. A, ECF No. 489-1. In April 2016, while Mitchell was still working for Array, he shared with Array's Thomas Conroy "3 recent Pricing intel points" for his use in "our cost comparison tool." Defs.' Ex. B, ECF No. 489-2. Later, in an August 2016 "Sales Strategy Meeting," Array executives and employees discussed "Potential strategy: Price-match NT installed cost + add 10-year wrnty." Defs.' Ex. F (meeting minutes), ECF No. 489-6. On February 15, 2017, Orshan notified other Array executives in regard to a project called Mt. Signal III that he had heard from a customer that "NEXTracker was offered the Exosun price and accepted that," which Corio understood to mean the customer was choosing NEXTracker for 13 cents. Def.'s Ex. G, ECF No. 489-7.

On September 8, 2017, TÜV Rheinland published a report on the Risk and Economic Analysis on Two Tracker Architectures (the "TUV Report"). Pl.'s Ex. 10, ECF No. 501-8; Stern Report ¶ 115, ECF No. 439-5. The TUV Report discussed O&M costs associated with Array's trackers compared to NEXTracker's trackers. Stern Report ¶ 115, ECF No. 439-5.[4] As Corio testified, "All the information that was in TUV's report about O&M was previously trade secret

---

[4] This Court has not yet determined whether Defendants' expert, Michael Stern, may testify to all the opinions set forth in his report under Federal Rule of Evidence 702. For purposes of resolving this motion, the Court will assume that Stern may testify to the opinions on which Defendants rely. As discussed herein, even relying on the evidence cited by Defendants in Stern's report, Array is entitled to summary judgment on the unclean hands defense.

to Array. When it was made public by TUV, any of the information that was in that report by virtue of going public with that information is no longer a trade secret." Corio Dep. 309:16-21, ECF No. 489-9. When asked if there are Array O&M costs now that are trade secret that are not in the TUV Report, Corio responded, "Not that I'm aware of." *Id.* at 309:22-310:1.[5]

## IV.   ANALYSIS

"[H]e who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). "This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id.* The equitable doctrine of unclean hands "means that equity will not in any manner aid a party whose conduct in relation to the litigation matter has been unlawful, unconscionable, or inequitable." *Houston Oilers, Inc. v. Neely*, 361 F.2d 36, 42 (10th Cir. 1966). *See also In re Borges*, 485 B.R. 743, 792 (D.N.M. 2012) (explaining that unclean hands doctrine requires party seeking relief not itself be guilty of fraudulent, illegal, or inequitable conduct in the matter for which he seeks relief) (citing *Home Savings & Loan Assoc. v. Bates*, 76 N.M. 660, 661, 417 P.2d 798, 799 (1966)); *Magnolia Mountain Ltd., Partnership v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 36, 131 P.3d 675 (same).

A plaintiff's unclean hands defense will only bar recovery "if the inequitable conduct is related to the plaintiff's cause of action." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229,

---

[5] Array asserts that its NPV tool includes more than Array's O&M cost information, such as installation costs and Array's assumptions of its calculations and component failures, so the TUV Report did not include all of its trade secret information. *See* Pl.'s Reply 6-7, ECF No. 501 (citing Ex. 7, ECF No. 501-5 and Parkins Report 19-26, ECF No. 439-3). Array also cites an earlier portion of Corio's deposition in which he stated: "limited information about our … O&M was made public in that report. Not all of the trade-secret information." Corio Dep. 308:10-12, ECF No. 490-8. On this motion for summary judgment filed by Array, the Court must construe the facts in Defendants' favor, and Defendants have presented evidence that the TUV Report made all of Array's then-O&M costs public. *See* Corio Dep. 309:22-310:1, ECF No. 489-9. The relevance of disclosures in the TUV Report is discussed *infra*.

1255 (10th Cir. 2013) (internal quotations omitted) (holding that unclean hands defense did not apply when defendant claimed that plaintiff infringed a separate trademark from the trademark at issue in the suit). For example, the Tenth Circuit applied the unclean hands doctrine in *Worthington v. Anderson*, a trademark violation case, where the plaintiffs threw economic obstacles in the way of defendants' compliance with the arbitral decision that awarded the trademark to the plaintiffs, making it difficult for defendants to undertake the considerable expense in divesting themselves of the materials bearing the trademark. 386 F.3d 1314, 1321-22 (10th Cir. 2004).

Defendants argue that the record establishes a fact issue as to whether Array is guilty of inequitable conduct in the matter in which it seeks relief. They rely on emails and testimony that indicate Array asked customers to provide it with NEXTracker's cost numbers to put into its O&M spreadsheet. *See* Defs.' Ex. A, C, and G, ECF No. 489-1, 489-3, and 489-7. Additionally, Array possessed NEXTracker documents: quotes with pricing, terms and conditions of sale, warranty information, *see* Defs.' Ex. D, ECF No. 489-4, an engineering diagram marked "proprietary," and O&M and installation manuals marked "Confidential for NEXTracker Customers," Defs.' Ex. E, ECF No. 489-5.

Relying in part on a statement in Defendants' response, Array contends that Defendants' cited evidence is not material. When explaining why they could not raise their unclean hands defense as a counterclaim, Defendants stated: "Defendants do not contend the information intentionally taken inequitably and in bad faith by ATI is itself trade secret, confidential, or a breach of any specific contractual duty owed to Defendants." Defs.' Resp. 15, ECF No. 489. Array thus argues that the evidence of its possession of public information about NEXTracker does not amount to the type of misconduct required for the defense to apply. Although Defendants admit

that the information Array possessed was not confidential, they continue to assert Array took it "inequitably" and "in bad faith."

Because Defendants have not demonstrated or explained how Array's conduct is illegal or fraudulent, the Court will restrict its analysis to whether Array's conduct was inequitable. *See Magnolia Mountain*, 2006-NMCA-027, ¶ 36. According to Defendants, it is inequitable to allow Array to claim that information it took from NEXTracker (internal pricing, product manuals, and sales pitch documents) to create the NPV tool constitutes misappropriation of trade secrets and breaches obligations regarding confidentiality when NEXTracker allegedly took the same information from Array. In other words, Defendants' unclean hands theory relies on the purported unfairness of Array's attempt to take non-confidential information from NEXTracker and "somehow transform[ it] into both confidential and trade secret information when allegedly taken by NEXTracker from Array." Defs.' Resp. 15, ECF No. 489. Defendants' argument, though, is essentially a defense to the elements Array must prove – that the information relayed was not confidential or trade secret when it left NEXTracker and it was not confidential when it allegedly came back to NEXTracker. More, however, is required for their affirmative defense. Although the emails indicate Array wanted cost numbers to put into its spreadsheet, the evidence does not establish that Array used confidential information of NEXTracker in the NPV tool, sales strategy, or in other alleged trade secrets. Defendants do not adequately explain how obtaining, possessing, and using non-confidential information amounts to improper or inequitable conduct. Nor have they cited any authority to support their position. The Court concludes that Defendants' evidence does not raise a genuine issue of material fact to establish that Array's conduct was inequitable as it relates to this case.[6]

---

[6] Assuming Stern may testify for Defendants, Stern opines in his report that purchasers of solar trackers share the type of information contained in Array's NPV tool in their effort to negotiate down the price, "making such

Finally, Defendants contend that Array intentionally published in the TUV Report the same allegedly trade secret information that is in its NPV tool, revealing Array's true view of the information. Defendants assert that Array implicitly admitted that the information it claims was misappropriated by NEXTracker is, in fact, not treated as confidential or trade secret by Array. The Court cannot agree that the publication of information *after* the alleged trade secrets were disclosed is an admission that the information was not trade secret *before* the publication of the TUV Report. The Court thus finds the publication of the TUV Report irrelevant to the unclean hands defense.

Defendants in their response have limited the basis of their unclean hands defense to the possession and alleged use of NEXTracker information to create Array's alleged trade secrets and trade secret tool. Although Defendants asserted more theories in their responses to interrogatories, Defendants have waived reliance thereon by failing to address and support any other theories in their summary judgment response. Accordingly, the Court grants summary judgment to Array on the unclean hands affirmative defense.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment Dismissing Defendants' Unclean Hands Defense (**ECF No. 479**) is **GRANTED**. Defendants' unclean hands affirmative defense is **DISMISSED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

---

information generally known and readily ascertainable by *proper* means." Stern Report ¶ 105, ECF No. 439-5 (italics added). *See also id.* ¶ 114 (describing sharing of O&M calculations as "considered proper" in tracker industry). Defendants contend that Stern's report catalogues the evidence of Array's unclean hands and inequitable conduct, *see* Defs.' Resp. 2, ECF No. 489, but the Court disagrees that Stern's report supports an unclean hands affirmative defense where his opinions are that obtaining the information in the NPV tool is common and proper in the industry.