IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARRAY TECHNOLOGIES, INC.,

    Plaintiff,

    v.                                                                                    Case No. 1:17-cv-00087-JCH-LF

COLIN MITCHELL, an individual;
NEXTRACKER, a Delaware corporation;
MARCO GARCIA, an individual;
DANIEL S. SHUGAR, an individual;
SCOTT GRAYBEAL, an individual; and
FLEXTRONICS INTERNATIONAL U.S.A.,
INC., a California corporation,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Flextronics International U.S.A., Inc.'s ("Flextronics") Motion to Amend the Second Amended Stipulated Protective Order and Confidentiality Agreement, filed on November 1, 2023. Doc. 657. Plaintiff Array Technologies, Inc. ("Array") filed its response on November 15, 2023. Doc. 658. Flextronics filed its reply on November 29, 2023. Doc. 660. Having read the submissions of the parties and being fully advised in the premises, the Court finds that Flextronics' motion is not well taken and DENIES it.

I. **Background Facts**

Array initiated this case on January 17, 2017. Doc. 1. During the pendency of the lawsuit, the parties negotiated and reached agreement on specific provisions that would govern the treatment of confidential and trade secret information produced in the action. Pursuant to the parties' agreement, the Court entered a Stipulated Protective Order and Confidentiality

Agreement ("protective order") on March 29, 2017.  Doc. 24.  The protective order limited the dissemination of information under the terms of the agreement and specifically stated that confidential information:

> shall not be used or disclosed for any purpose other than for preparation and trial of this litigation—No. 1:17-cv-00087-[JCH]-LF—in the United States District Court for the District of New Mexico, and/or of any appeal therefrom, and shall not be used for any other purpose, including, but not limited to, business, governmental, commercial, or administrative proceedings or purposes.

Doc. 24 at 8, ¶ 12.  The protective order was amended after additional negotiation and stipulation of the parties.  Docs. 123, 236.  The provision limiting disclosure to the instant case was included in all versions of the protective order.  Doc. 123 at 10, ¶ 13; Doc. 236 at 11, ¶ 13.

In July of 2022, after more than five years of litigation, the parties were able to reach a negotiated resolution.  *See* Docs. 644, 646,  The Honorable District Judge Judith C. Herrera granted the parties' joint motion to dismiss on September 30, 2022, and retained jurisdiction "solely to, if necessary, adjudicate an alleged breach, the validity, the enforceability, or the application, or to interpret any disputed provisions, of the parties' [settlement] Agreement."  Doc. 656 at 2.  The case was closed with that order.  Doc. 656.  More than a year later, Flextronics filed its motion to modify the Second Amended Stipulated Protective Order and Confidentiality Agreement (Doc. 236), entered in this case on October 25, 2018.  Doc. 657.

On March 17, 2023, Flextronics initiated arbitration proceedings against certain of its insurers seeking coverage for the settlement and defense costs incurred in this case*.  Id.* at 5.  Flextronics contends that the issues in the arbitration are intertwined with the issues raised in this case, including Array's actions, the defendants' alleged liability, and Array's alleged damages.  *Id.*  Flextronics further contends that "evidence related to these issues will assist with determining whether Flextronics' insurers wrongfully failed to provide coverage," and that "all

of these issues are impacted by information designated as protected information under the Protective Order." *Id.*

In its motion, Flextronics asks the Court to modify the protective order to allow it to produce all Array's documents to its insurers and to use any of Array's documents in the arbitration proceedings, subject to a protective order entered in those proceedings. Doc. 657. Array argues that it will be severely prejudiced if the Court were to grant Flextronics' motion, particularly given the huge number of documents produced in this case subject to the protective order. Doc. 658. For the following reasons, the Court DENIES Flextronics' motion.

**II. Discussion**

"As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). A modification of a protective order is appropriate when it can "place private litigants in a position they would otherwise reach only after repetition of another's discovery," but should not be made where "it would tangibly prejudice substantial rights of the party opposing modification." *Id.* (internal citation and quotation omitted). Any modification of a protective order is left to the discretion of the district court. *Id.*

    A. <u>Modification of the Protective Order is not Appropriate</u>.

Flextronics does not show that a modification to the protective order would avoid duplicative discovery. In support of their motion, Flextronics cites *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424 (10th Cir. 1990). In *United Nuclear*, the Tenth Circuit affirmed the district court's decision to allow additional parties to intervene and modify the protective order to allow intervenors access to discovery for use in collateral federal and state

litigation with the same defendants. *Id.* at 1426.  In *United Nuclear*, the intervening parties were seeking the same relief from the same defendants as the plaintiff in the settled lawsuit. *Id.*  The Court explained that "when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration—saving time and effort in the collateral case by avoiding duplicative discovery." *Id.* at 1428.  In other words, the modification would place the litigants in a position they would otherwise reach only after repetition of another's discovery. *Id.*  Under the circumstances in *United Nuclear*, modifying the protective order in the settled case allowed the intervenors access to discovery they would have obtained in their collateral lawsuits against the same defendants.  This approach was less burdensome and protected the defendants' interest in continued secrecy against the public at large. *Id.*  The Tenth Circuit, therefore, found that the district court did not abuse its discretion by modifying the protective order. *Id.*

    *United Nuclear* is distinguishable from this case.  Here, Flextronics is involved in a dispute with its insurers and is currently in arbitration proceedings.  The modification proposed by Flextronics would allow it to disclose *all* Array's confidential documents and information in the private arbitration, an arbitration to which Array is not a party.  Importantly, it is not obvious that the insurers would be entitled to discover all the confidential information Array produced in this case in the arbitration proceedings.  The issue in the arbitration is whether Flextronics is entitled to insurance coverage related to the defense and settlement of this lawsuit.  The issues in this lawsuit were far broader—including allegations that defendants, or some of them, violated federal and state trade secrets acts, breached or encouraged a breach of contract and the covenant of good faith and fair dealing, committed fraud or constructive fraud, were unjustly enriched, etc.  Further, the claims involved multiple defendants, not just Flextronics.  Allowing the

4

modification of the protective order might be easier for Flextronics and its insurers, but it is not clear that the modification would simply provide discovery to Flextronics' insurers that they otherwise would be entitled to. Indeed, on its face, it seems like Flextronics' insurers would receive thousands, if not hundreds of thousands, of documents that are simply irrelevant to the arbitration proceedings. Consequently, Flextronics has not made an initial showing that the modification is appropriate.

B. The Modification Sought by Flextronics is Prejudicial to Array.

Array produced over 300 gigabytes of electronic information and over 600,000 pages of business records and company documents in this case, which include Array's trade secrets and confidential materials. Doc. 658 at 4. Flextronics is requesting that it be permitted to provide third parties with access to *all* the materials produced by Array in a proceeding that does not include Array as a party. The modification would leave Array without the ability to object to the scope of any document requests by Flextronics' insurers. As the Honorable Magistrate Judge Lorenzo F. Garcia explained, "[i]n *United Nuclear*, the Tenth Circuit permitted modification in part because the defendants 'are parties to the collateral suits' and therefore 'have both the interest and standing to raise in those courts [here, in arbitration proceedings] any relevancy or privilege objections to the production of any materials.'" *Four Corners Nephrology Associates, P.C. v. Mercy Med. Ctr. Of Durango*, 2009 WL 4730471, at *4 (D. Colo. Dec. 7, 2009) (unpublished) (quoting *United Nuclear*, 905 F.2d at 1428–29).[1] Because Array is not a party to the arbitration, Array does not have standing to object to any disclosures. Further, Array would

---

[1] Judge Garcia's decision was affirmed on appeal by District Judge James A. Parker. *Four Corners Nephrology Asso., P.C. v. Mercy Med. Ctr.*, 1:05-cv-02084-JAP-LFG, Doc. 250 (D. Colo. 2010). Flextronics points out that Four Corners is an "out-of-district" opinion. Doc. 660 at 6. The Court notes, however, that both Judge Parker and Judge Garcia were judges in the District of New Mexico. Further, the Court finds *Four Corners* persuasive.

not have the ability to control and monitor the use of its confidential documents and information. It would not be able to determine how its confidential and trade secret information is being handled or used, and it would have no recourse if the confidential materials were mishandled.

Flextronics argues that Array's confidential information would be protected by a similar protective order entered by the arbitrator. Doc. 657 at 2; Doc. 660 at 1, 3. "The fact that released documents would be subject to any protective order entered by [the arbitrator] is no guarantee of confidentiality because, just as this Court has authority to modify its protective order even after the case is closed, so, too, [the arbitrator] has the authority to modify his [or her] order." *Four Corners*, 2009 WL 4730471, at *3. And because Array is not a party to the arbitration, it would not have an opportunity to object to any such modification or even receive notice of a modification. Similarly, Array would not have any recourse if the protective order is violated by the parties to the arbitration.

Flextronics argues that if Array discovers that a third party has not complied with the protective order, it can seek this Court's enforcement of the protective order and pursue all other remedies available to it. Doc. 660 at 5. This is exactly the type of prejudice that is avoided if the Court refuses to modify the protective order. Array already has been prejudiced by having to incur new expenses and fees to protect interests it thought were secured by its prior agreements with Flextronics. If the protective order is modified, Array will be forced to monitor the arbitration proceedings and potentially be put to further expense and attorney time to oppose potential disclosures or violations of the protective order. For example, the protective order entered in the arbitration proceeding permits objections to designation of confidential documents that are produced in that proceeding. If the objection is not resolved, any of the *parties* may submit a formal motion to the arbitration panel. Doc. 657-1 at 20. Array does not have standing

to file any such motion and, even if it did, should not have to incur the expense to do so. Array and defendants, including Flextronics, carefully and extensively negotiated the protective order in this case, and they settled the case on the eve of trial with the intention of putting a complete end to the parties' controversies. Array should be able to rely on the benefit it bargained for in the protective order and the settlement.

Flextronics contends that any recipient of protected information will execute an acknowledgement that subjects them to this Court's jurisdiction for the enforcement of the protective order. The Court is not interested in inserting itself into the arbitration proceeding or forcing non-parties to subject themselves to the jurisdiction of this Court for the purpose of enforcing an agreement in a case that is long dismissed.[2] Flextronics also has not demonstrated that the Court has such authority. Judge Garcia noted that there are sound public policy reasons for enforcing the parties' bargain:

> A court should be hesitant to modify protective orders for matters unrelated to the litigation in front of it because otherwise, in the long run, parties may begin to distrust protective orders. Discovery, in turn, will become more complicated and expensive and settlements will be more difficult. A natural feeling of unfairness arises when the rules are modified during the middle of the game, especially without very good cause.

*Four Corners*, 2009 WL 4730471, at *4 (quoting *SmithKline Beecham Corp v. Sython Pharmaceuticals, Ltd.*, 210 F.R.D. 163, 166 (M.D.N.C. 2002) (internal citations omitted)).

In addition, the Tenth Circuit has noted that a district court's continuing jurisdiction over a closed case is limited. *See United Nuclear*, 905 F.2d at 1428. While the district court has the

---

[2] Indeed, my guidelines for protective orders state that "[t]he protective order should refrain from stating that it is binding on non-parties or that the Court has jurisdiction over non-parties to enforce the protective order's provisions. The Court will not order a non-party to consent to the Court's jurisdiction or to abide by the protective order's terms."
https://www.nmd.uscourts.gov/sites/nmd/files/Judge%20Fashing%20Guidelines%20for%20Proposed%20Protective%20Orders%209-2-2015_0.pdf (last visited 1/4/24).

power and discretion to modify a protective order, "because the underlying controversy [is] no longer alive, the court simply lack[s] power to impose any new, affirmative requirements on the parties relating to discovery." *Id*. (quotation and citations omitted).  Further,

> the district court must refrain from issuing discovery orders applicable only to collateral litigation.  Federal civil discovery may not be used merely to subvert limitations on discovery in another proceeding . . . .  [A] collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation.

*Id.* (internal quotation marks and citation omitted).  Should Array seek to enforce this Court's protective order as against the parties to the arbitration or limit their access to certain materials, Array necessarily would be asking this Court to issue discovery orders applicable to the collateral litigation, which it cannot do.

Flextronics further contends that it seeks only a narrow modification of the protective order.  Doc. 657 at 2.  As Array points out, however, the declarations submitted by Flextronics insurance carriers indicate broad-ranging disclosure.  For example, in the declaration of Steven James Fleming, Mr. Fleming indicates that The Chubb European Group SE ("CEGSE") has "disclosure obligations to auditors and regulatory agencies under the laws of the European Union, France, and the United Kingdom to provide claims-related records and information." CEGSE, therefore, is proposing revisions to the current protective order in the arbitration proceeding that would allow it to disclose documents received in the arbitration to entities across the Europe.  Doc. 657-4 at 4, ¶¶ 14–17.  Similarly, the declaration submitted by Stewart Ping states that Allianz Global Corporate & Specialty SE ("Allianz") has contractual obligations to disclose information to "reinsurers or retrocessionaires" and also has regulatory disclosure obligations under the laws of the United Kingdom and Germany which would include documents or information produced in arbitration.  Doc. 657-3 at 4, ¶¶ 7–10.  Allianz also is supporting

8

proposed revisions to the protective order in the arbitration that would allow the disclosure of confidential information to "any reinsurer, retrocessionaire, or regulatory agencies." *Id*. at 4, ¶¶ 11–12.  Array has an interest in protecting its confidential and trade secret information, and the modification requested by Flextronics potentially would allow for disclosure to countless entities and individuals, both in the United States and in Europe.

Flextronics argues that Array would not be harmed by the disclosure because it previously agreed that one of Flextronics' insurers could view Array's confidential documents. Doc. 657 at 7.  Array points out that it agreed to a limited disclosure while the case was still pending to facilitate settlement, which is not the current situation.  In that instance, Array was a party to the proceedings and had control over which documents were disclosed, and had the means to enforce the protective order, should that become necessary.  Here, as discussed above, Array will not have the benefit of those protections.  Simply because Array gave consent to disclose in one instance does not eliminate the potential harm if its confidential information is disclosed to Flextronics' insurers (and reinsurers, retrocessionaires, and regulatory agencies) in the arbitration proceedings.

Flextronics complains that Array "has not established that its documents or information produced in the case still constitutes trade secrets." Doc. 660 at 2.  This argument has no merit. Array previously demonstrated that the information produced in this lawsuit was confidential trade secrets as demonstrated by the entry of an extensive protective order.  Further, Flextronics "does not dispute for purposes of its motion that [Array's] documents and information still constitute trade secrets." *Id.*

Finally, Flextronics complains that Array has requested that it destroy or return Array's confidential information so that there is no potential for the information to be disclosed during

9

the arbitration proceeding. Doc. 66 at 11. The protective order requires the parties to return or destroy any confidential material designated under its terms within sixty days after the conclusion of the action. Doc. 236 at 17, ¶ 27. It is well past 60 days, and it appears that Flextronics has not destroyed or returned Array's confidential information in violation of the protective order. To the extent Flextronics has not complied with this provision, the Court will require Flextronics' compliance.

### III. Conclusion

For the reasons stated above, the Court finds that Flextronics has not demonstrated that a modification to the protective order is appropriate. It also finds that Array would be prejudiced by the proposed modification. The Court further finds that Flextronics is in violation of the protective order to the extent it is has failed to return or destroy Array's documents or information designated and protected pursuant to the terms of the protective order.

IT IS THEREFORE ORDERED as follows:

1. Flextronics International U.S.A., Inc.'s Motion to Amend the Second Amended Stipulated Protective Order and Confidentiality Agreement (Doc. 657), filed on November 1, 2023, is DENIED; and

2. To the extent a party has not already done so pursuant to Doc. 236 at 17, ¶ 27, all Confidential, Highly Confidential, or Highly Confidential – Outside Counsel Eyes Only Documents disclosed or produced in this litigation (other than documents filed in the official court record) shall be returned to the Producing Party or destroyed no later than **30 days** from the date of this order; and

3. To the extent a party has not already done so, counsel for any party that received Confidential, Highly Confidential, or Highly Confidential – Outside Counsel Eyes

Only Documents shall make written certification of compliance with Doc. 236 at 17, ¶ 27, and shall deliver the same to counsel for each Producing Party no later than **60 days** from the date of this order.

_____
Laura Fashing
United States Magistrate Judge